******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

FRANCESCA PELC *v.* SOUTHINGTON DENTAL
ASSOCIATES, P.C., ET AL.
(AC 46781)

Moll, Clark and Seeley, Js.

*Syllabus*

The law firm L Co. appealed from the judgment of the Compensation Review
Board affirming the decision of the administrative law judge denying L Co.'s
motions to dismiss and to stay proceedings in an attorney's fee dispute. In
2016, L Co., which had represented the claimant in the underlying workers'
compensation claim from 2007 to 2018, had an arrangement approved by
the workers' compensation commissioner by which the employer's workers'
compensation insurer would send the claimant's weekly benefits checks,
and any other workers' compensation benefits to which she was entitled,
to L Co. so that L Co. could deduct an attorney's fee from the checks. In
2018, the claimant dismissed L Co. and retained the law firm W Co. In 2019,
as part of a full and final settlement of the underlying workers' compensation
claim, the workers' compensation commissioner approved a lump sum attor-
ney's fee, which he ordered W Co. to hold in escrow pending an agreement
on the allocation of the fee between L Co. and W Co. On appeal, L Co.
claimed, inter alia, that the board improperly affirmed the administrative
law judge's conclusion that L Co., with regard to the 2016 arrangement,
lacked an enforceable award of attorney's fees pursuant to statute (§ 31-
327 (a)). *Held*:

This court dismissed the appeal as nonjusticiable for lack of ripeness with
respect to L Co.'s claim that the board improperly affirmed the administrative
law judge's conclusion that the statute (§ 1-84b (b)) governing certain activi-
ties of public officials or state employees after leaving office or employment
could not serve as a basis for denying W Co.'s claim for attorney's fees
because, as W Co.'s receipt of some portion of the attorney's fee held in
escrow may never interfere with L Co.'s cognizable legal interest in its own
fee, any injury to L Co. resulting from a determination regarding W Co.'s
entitlement to a fee was purely hypothetical.

The board did not improperly reject L Co.'s contention that the 2016 fee
approval constituted an award of attorney's fees subject to enforcement in
the Superior Court pursuant to § 31-327 (a) because the transfer of funds
contemplated by the 2016 fee approval flowed directly from the claimant
to her attorneys and was not a fee to be paid by an employer or insurer,
as required by § 31-327 (a).

L Co.'s claim that the administrative law judge's authority to modify the
2016 fee approval was limited by statute (§ 31-315) was unavailing, as § 31-
315 does not address attorney's fees and the proposition found no support

in the unambiguous statutory text of or in this court's case law interpreting § 31-327 (b), which gives administrative law judges broad power over attorney's fees in workers' compensation cases.

L Co.'s claim that the entire Workers' Compensation Commission should have disqualified itself from the present case was foreclosed by the doctrine of necessity, as this court has held that the adjudication of fee disputes between successive counsel concerning their representation of a claimant before the commission rests squarely within the jurisdiction of the commission and disqualification of the entire commission would destroy the only tribunal in which relief could be had.

The board did not improperly overlook the administrative law judge's alleged violation of L Co.'s due process right to be heard because, even assuming arguendo that the administrative law judge's decision to mark all of the parties' exhibits for identification only and to base his ruling solely on the items of which he had taken administrative notice violated due process, any error was harmless.

Argued January 13—officially released May 6, 2025

*Procedural History*

Appeal from the decision of the administrative law judge for the Eighth District denying the motions to dismiss and to stay proceedings filed by the Law Offices of Levine & Levine, brought to the Compensation Review Board, which affirmed the administrative law judge's decision, from which the Law Offices of Levine & Levine appealed to this court. *Appeal dismissed in part; affirmed.*

*Jennifer B. Levine*, with whom was *Harvey L. Levine*, for the appellant (Law Offices of Levine & Levine).

*Michael A. Lanza*, with whom was *John B. Cantarella* and, on the brief, *Wesley W. Horton*, for the appellee (Walker, Feigenbaum & Cantarella Law Group, LLC).

*Opinion*

CLARK, J. In this attorney's fees dispute, the appellant, the Law Offices of Levine & Levine, appeals from the decision of the Compensation Review Board

(board), which affirmed the decision of the administrative law judge[1] denying the appellant's motions to dismiss for lack of subject matter jurisdiction and for a stay of proceedings, and continuing a formal hearing to take evidence on the question of how to allocate an escrowed attorney's fee between the appellant and the appellee, Walker, Feigenbaum & Cantarella Law Group, LLC.[2] On appeal, the appellant argues that (1) the board improperly affirmed the administrative law judge's conclusion that an alleged violation of General Statutes § 1-84b (b)[3] could not serve as a basis for denying the appellee quantum meruit recovery of a portion of the escrowed attorney's fee; (2) the board improperly affirmed the administrative law judge's conclusion that the appellant lacked an enforceable award of attorney's

---

[1] The administrative adjudicators for the Workers' Compensation Commission (commission) became known as administrative law judges, rather than their former title of workers' compensation commissioners, in 2021. See Public Acts 2021, No. 21-18, § 1 (P.A. 21-18). Because this appeal includes decisions rendered both before and after October 1, 2021, which was the effective date of P.A. 21-18, we refer to the commission's administrative adjudicators by their title at the time of the applicable decisions. See *Gardner* v. *Dept. of Mental Health & Addiction Services*, 351 Conn. 488, 490 n.1, 331 A.3d 1203 (2025).

[2] "General Statutes § 31-301b provides that [a]ny party aggrieved by the decision of the Compensation Review Board upon any question or questions of law arising in the proceedings may appeal the decision of the Compensation Review Board to the Appellate Court, whether or not the decision is a final decision within the meaning of section 4-183 or a final judgment within the meaning of section 52-263. Our appellate courts expressly have recognized that the final judgment requirement does not apply to appeals taken from the board." (Internal quotation marks omitted.) *Britto* v. *Bimbo Foods, Inc.*, 217 Conn. App. 134, 136 n.3, 287 A.3d 1140 (2022), cert. denied, 346 Conn. 921, 291 A.3d 1040 (2023).

[3] General Statutes § 1-84b (b) provides: "No former executive branch or quasi-public agency public official or state employee shall, for one year after leaving state service, represent anyone, other than the state, for compensation before the department, agency, board, commission, council or office in which he served at the time of his termination of service, concerning any matter in which the state has a substantial interest. The provisions of this subsection shall not apply to an attorney who is a former employee of the Division of Criminal Justice, with respect to any representation in a matter under the jurisdiction of a court."

fees pursuant to General Statutes § 31-327 (a);[4] (3) the entire Workers' Compensation Commission (commission) should have disqualified itself from hearing these proceedings; and (4) the board overlooked the administrative law judge's alleged violation of the appellant's right to be heard and concomitant violation of the appellant's due process rights. We dismiss the appeal as to the appellant's first claim and affirm the decision of the board in all other respects.

The following facts, as found by the administrative law judge or as otherwise undisputed in the record, and procedural history are relevant to this appeal. The claimant, Francesca Pelc, sustained injuries to her knees, ankles, and back in the course of her employment with Southington Dental Associates, P.C. By agreement, October 24, 2006, was deemed the date of injury for the claimant's compensable claim. Beginning in September, 2007, and continuing until May, 2018, the appellant represented the claimant in proceedings before the commission and attended thirty-nine informal or preformal hearings.[5] These hearings were held

---

[4] General Statutes § 31-327 provides: "(a) Whenever any fees or expenses are, under the provisions of this chapter, to be paid by the employer or insurer and not by the employee, the administrative law judge may make an award directly in favor of the person entitled to the fees or expenses, which award shall be filed in court, shall be subject to appeal and shall be enforceable by execution as in other cases. The award may be combined with an award for compensation in favor of or against the injured employee or the dependent or dependents of a deceased employee or may be the subject of an award covering only the fees and expenses.

"(b) All fees of attorneys, physicians, podiatrists or other persons for services under this chapter shall be subject to the approval of the administrative law judge."

[5] "The informal hearing is ordinarily a [fifteen]-minute session at which interested parties meet with a workers' compensation commissioner in an attempt to resolve issues. Traditionally, the informal hearing is the backbone of a workers' compensation system. . . . The informal hearing serves to bring light to any unresolved issue concerning workers' compensation. . . . The informal hearing . . . is triggered upon failure to reach an agreement." R. Carter et al., 19 Connecticut Practice Series: Workers' Compensation (2024) § 20 Introduction, pp. 745–46.

before various commissioners in the sixth district, including then Commissioner Ernie Walker.

By January, 2016, the claimant had been collecting benefits pursuant to General Statutes § 31-307,[6] on a weekly basis, for approximately seven years. By letter dated December 28, 2015, the claimant instructed her employer's workers' compensation insurer, The Hartford, to send her weekly benefit checks—as well as any other workers' compensation benefits to which she might be entitled, including lump sum benefits—to the appellant so that the appellant could deduct a fee from her checks. An informal hearing was held on January 28, 2016, before Commissioner Nancy Salerno, who approved this arrangement and orally directed The Hartford to comply (2016 fee approval). In her notes from that hearing, Salerno wrote in relevant part: "[The

"A preformal hearing may be held when issues have not been resolved at one or more informal hearings. . . . [T]he [commission] utilizes [preformal hearings] to facilitate the settlement of claims and preparation of a claim for trial at the [f]ormal hearing." (Internal quotation marks omitted.) *Pagan* v. *Carey Wiping Materials Corp.*, 144 Conn. App. 413, 416 n.7, 73 A.3d 784, cert. denied, 310 Conn. 925, 77 A.3d 142 (2013); see also 19 R. Carter et al., supra, § 20.5, pp. 753–54.

[6] General Statutes § 31-307 provides in relevant part: "(a) If any injury for which compensation is provided under the provisions of this chapter results in total incapacity to work, the injured employee shall be paid a weekly compensation equal to seventy-five per cent of the injured employee's average weekly earnings as of the date of the injury . . . . No employee entitled to compensation under this section shall receive less than twenty per cent of the maximum weekly compensation rate, as provided in section 31-309, provided the minimum payment shall not exceed seventy-five per cent of the employee's average weekly wage, as determined under section 31-310, and the compensation shall not continue longer than the period of total incapacity. . . .

"(c) The following injuries of any person shall be considered as causing total incapacity and compensation shall be paid accordingly: (1) Total and permanent loss of sight of both eyes, or the reduction to one-tenth or less of normal vision; (2) the loss of both feet at or above the ankle; (3) the loss of both hands at or above the wrist; (4) the loss of one foot at or above the ankle and one hand at or above the wrist; (5) any injury resulting in permanent and complete paralysis of the legs or arms or of one leg and one arm; (6) any injury resulting in incurable imbecility or mental illness. . . ."

claimant] has been on [temporary total][7] for [seven years] plus [and] continues to receive [temporary total] [with] [cost of living adjustments].[8] [The claimant] agrees to have [the appellant] receive her weekly [temporary total] check [and] take a fee. (See attached letter) I approve same." (Footnotes added.)

Walker retired from the commission on April 1, 2018. On May 29, 2018, the claimant filed a notice of appearance in lieu of the appellant, indicating that she would be representing herself. That same day, the appellant filed a request for an emergency informal hearing regarding the "administration of permanent [temporary total] benefits & legal fees in lieu of new [notice of appearance]." Subsequently, on June 14, 2018, Attorney John Cantarella filed an appearance with the commission on the claimant's behalf, in lieu of her May 29, 2018 self-represented appearance. In his appearance, Cantarella identified his law firm as "Walker, Feigenbaum & Cantarella," i.e., the appellee. Both Cantarella and Walker are principals of the appellee.

By letter dated June 14, 2018—the same day that he entered an appearance on the claimant's behalf before the commission—Cantarella advised The Hartford of his representation of the claimant and requested that the adjuster send 20 percent of the claimant's weekly benefit check directly to the appellant and the

---

[7] "There are two types of workers' compensation disability in Connecticut for which benefits may be awarded: total incapacity and partial incapacity. . . . Within total incapacity there are two categories: temporary total incapacity and permanent total incapacity. Temporary total incapacity applies to an employee . . . who is unable to seek any type of employment because of disability. Total permanent incapacity refers to an employee who is totally incapacitated and receives an additional benefit based on the permanent loss of a body part. This is in contrast to partial disability, where the employee is able to find alternative employment but experiences a wage loss as a result of the disability." (Citation omitted.) *Laliberte* v. *United Security, Inc.*, 261 Conn. 181, 182 n.1, 801 A.2d 783 (2002).

[8] See General Statutes § 31-307a (c).

remaining 80 percent directly to the claimant at her home address. An informal hearing was held before Salerno on June 28, 2018. In her notes from that hearing, Salerno wrote in relevant part: "Effective approximately 2-3 weeks ago, [the claimant] has a new [attorney]—John Cantarella Firm. . . . [O]ngoing [temporary total] [to be paid] as follows: [20 percent] to prior [attorney] Levine directly [and] [80 percent] to [the claimant's] new [attorney] Cantarella who will in turn forward to [the claimant] directly. Note—[Cantarella] is not taking a fee off [the claimant's] [temporary total] benefits at this time." At a subsequent informal hearing on July 20, 2018, Commissioner John Mastropietro issued an order that read in relevant part: "The claimant is currently receiving weekly [temporary total] checks, 80 percent of said amount weekly is to be paid to the claimant directly and 20 percent of said weekly amount to be paid directly to the [appellant]."

By letter dated April 17, 2019, Cantarella informed the appellant that the parties to the claimant's workers' compensation case had reached a tentative settlement agreement and asked the appellant to "[p]lease inform me of your costs [i]n this matter." The appellant then wrote a letter to the commission, dated April 26, 2019, requesting that a formal hearing be held before the approval of any settlement in order "to disclose to [the] [c]ommission all the facts which are necessary to determine if a settlement [would be] in [the claimant's] best interests." In this letter, the appellant expressed concern that because, in its view, the claimant was presently "well provided for" as a result of its efforts on her behalf, "the wrong settlement more likely than not . . . would soon leave her dependent upon [s]tate aid." The appellant further requested that, as part of any settlement, the commission order the appellee to put the attorney's fee in escrow until the commission could render a decision regarding the allocation of that fee.

On June 6, 2019, Commissioner William Watson III approved a full and final settlement of the claimant's case, the total value of which was $1,037,570. Watson concurrently approved a total attorney's fee of $185,247, which he ordered Cantarella to hold in escrow pending an agreement on the allocation of the fee with the appellant or, in the absence of such an agreement, litigation thereof. The attorney's fee was placed in escrow. In the ensuing months, various informal and preformal hearings were held before the commission, and the issue of the allocation of the approved fee was twice scheduled for a formal hearing in the sixth district, only to be postponed. The appellant also filed several motions. Among these motions was a motion dated January 22, 2020, to disqualify Watson "and all commissioners with an appearance of conflict of interest and bias," in which the appellant requested that the case be transferred to the Superior Court. Watson did not disqualify himself but ordered the case transferred to the eighth district, where he did not sit. Pending this transfer, the appellant and the appellee were ordered to file affidavits of fees and expenses, and they did so.

On April 30, 2020, a preformal hearing was held before Administrative Law Judge David Schoolcraft (administrative law judge) in the eighth district. The parties agreed from the outset that no resolution could be reached and that a formal hearing was necessary to determine the allocation of the escrowed fee. The appellant stated its position that the commission lacked jurisdiction to address the allocation of the fee but expressed a desire for a formal hearing in order to create a record for appeal. The parties agreed that the administrative law judge would preside over the formal hearing. On June 17, 2020, the principals of the appellant, Harvey Levine and Jennifer Levine, filed a civil action in the Superior Court (civil action) asserting various claims against the claimant; the appellee and

its named principals; and the Law Office of Kevin C. Ferry, LLC, and its named principal. See generally *Levine* v. *Pelc*, Superior Court, judicial district of New Britain, Docket No. CV-20-6060229-S.

On February 3, 2021, the appellant filed with the commission a motion to dismiss for lack of subject matter jurisdiction and a motion to stay all proceedings. In these motions, the appellant argued that the 2016 fee approval constituted an award of fees and expenses under § 31-327 (a). The appellant further stated that it was seeking enforcement of this "award" in the civil action, wherein it had asserted, inter alia, a claim of breach of contract against the claimant, and that the Superior Court had exclusive jurisdiction over such enforcement. The appellant argued that, because it sought satisfaction of damages in the civil action from the escrowed fee, the commission could not allocate the fee without impairing its rights.

The appellant also asserted in its motions that an award of attorney's fees to the appellee for work performed on the claimant's case during Walker's first year of retirement from the commission was contrary to public policy as expressed in § 1-84b (b).[9] At the same

[9] The appellant's motion to dismiss also alleged that Walker had violated General Statutes § 1-84 (b) and (c). Section 1-84 provides in relevant part: "(b) No public official or state employee shall accept other employment which will either impair his independence of judgment as to his official duties or employment or require him, or induce him, to disclose confidential information acquired by him in the course of and by reason of his official duties.

"(c) No public official or state employee shall wilfully and knowingly disclose, for financial gain, to any other person, confidential information acquired by him in the course of and by reason of his official duties or employment and no public official or state employee shall use his public office or position or any confidential information received through his holding such public office or position to obtain financial gain for himself, his spouse, child, child's spouse, parent, brother or sister or a business with which he is associated. . . ."

On appeal, the appellant does not make any claims pertaining to alleged violations of § 1-84 (b) or (c) by Walker.

time, the appellant contended that the commission lacked jurisdiction to determine whether Walker had violated § 1-84b (b) because "it would be a direct conflict of interest for the commission to enter any opinions that directly [address] the public policy concerns of recently retired workers' compensation commissioners practicing before the [commission] for financial gain within one year of their retirement" and because "there is an inherent or built-in bias from the entire panel of workers' compensation commissioners against [the appellant] as evidenced in the public policy concerns intrinsically expressed in [General Statutes] §§ 1-84 (b), 1-84 (c)[10] and 1-84b (b) along with evidence of bias against [the appellant] that has thus far been directed at [the appellant] in this case . . . ." The claimant and the appellee filed objections to these motions, and the commission deferred ruling on the motions until a formal hearing could be held. The formal hearing was initially scheduled for March, 2021, but was postponed until June, 2021, at the appellant's request.

On May 25, 2021, at the request of all defendants, the court overseeing the civil action, *Farley, J.*, entered a stay of proceedings in the civil action pending resolution of this matter before the commission. That stay has been extended several times as this case has proceeded through the administrative appeal process and before this court; most recently, on November 12, 2024, the court, *Knox, J.*, ordered that the civil action be stayed until May 19, 2025.

On June 10, 2021, the appellant filed with the commission a motion to bifurcate, requesting that at the upcoming formal hearing the administrative law judge address the procedural and jurisdictional issues raised by the pending motions to dismiss and for a stay and defer ruling on the substantive question of how to allocate

---

[10] See footnote 9 of this opinion.

the attorney's fees between the parties. The administrative law judge deferred ruling on the motion to bifurcate until the formal hearing. The formal hearing, which was held remotely, began on June 23, 2021. The administrative law judge began the hearing by taking administrative notice of forty-three items in the commission file. The administrative law judge then began to mark various exhibits proffered by the parties but subsequently concluded that he could not effectively determine what evidence would be material until he could identify the issues subject to litigation before the commission. He thus suspended marking exhibits pending a ruling on the appellant's motions and designated all exhibits proffered by the parties—including those that had previously been marked as full—as being for identification only. The administrative law judge did not rule on the appellant's motions to dismiss and for a stay of proceedings during the June 23, 2021 formal hearing.

On June 28, 2021, in a letter to the parties, the administrative law judge requested supplemental briefing on the following issues: (1) "Would a § 1-84b (b) violation, if it occurred, be material to the distribution of fees in this forum? Put another way: if the [appellee] was disqualified from representing [the claimant] under § 1-84b (b), would that mean no portion of the escrowed fee could be awarded to [Cantarella] by a commissioner?" (2) "Assuming determination of whether there was a violation of § 1-84b (b) were necessary before allocation of fees, is that a factual question that can be determined by a workers' compensation commissioner, for the limited purposes presented in this case?" And (3) "[d]id the undertaking of representation by Cantarella violate § 1-84b (b)?" The appellee filed its supplemental brief on August 6, 2021, and the appellant filed its supplemental brief on September 9, 2021.

On November 3, 2021, the administrative law judge issued a memorandum of decision denying both the

motion to dismiss and the motion for a stay. The administrative law judge determined that the appellant's argument that the commission lacked jurisdiction to allocate the attorney's fee ran afoul of *Frantzen* v. *Davenport Electric*, 179 Conn. App. 846, 181 A.3d 578, cert. denied, 328 Conn. 928, 182 A.3d 637 (2018), in which this court held that the commission has jurisdiction to resolve fee disputes between successive counsel concerning their representation of a claimant before the commission. See id., 855. The administrative law judge concluded that "the allocation of approved contingency fees between sequential counsel is a task that lies solely within the jurisdiction of this commission and is a responsibility that can neither be evaded nor farmed out."

With respect to the appellant's argument that the 2016 fee approval constituted an award of fees and expenses under § 31-327 (a), the administrative law judge concluded that (1) the 2016 fee approval did not constitute an "award" of attorney's fees that could be enforced in the Superior Court, but only an "authorization" to take a fee that was "subject to change at any time"; (2) even if the 2016 fee approval had been an "award" of attorney's fees, it would not be subject to enforcement pursuant to § 31-327 (a) because that statute applies only to awards of attorney's fees and expenses to "be paid by the employer or insurer and not by the employee," whereas the fee deducted by the appellant represented an obligation owed by the claimant to the appellant; and (3) nothing in Salerno's notes or Mastropietro's 2018 order permitted the appellant to take fees from anything other than the claimant's weekly benefit checks, which had stopped once Watson approved a full and final settlement of the case in 2019. (Emphasis omitted; internal quotation marks omitted.)

The administrative law judge also rejected the appellant's argument pertaining to § 1-84b (b). In doing so,

he made two key conclusions. First, he agreed with the appellant that the commission lacked jurisdiction to determine whether Walker had violated § 1-84b (b), but not, as the appellant had argued, because of a conflict of interest and bias on the part of the commission. The administrative law judge, instead, based his conclusion on General Statutes § 1-82, which, he explained, "sets out a comprehensive procedure" for adjudicating alleged violations of § 1-84b (b), "involving, inter alia, investigation by the ethics enforcement officer of the Office of State Ethics, a trial before the Citizen's Ethics Advisory Board . . . and various rules protecting the due process rights of the respondent." The administrative law judge reasoned that this statutory scheme confers jurisdiction on the Citizen's Ethics Advisory Board and the Office of State Ethics—not the commission or the Superior Court—to adjudicate violations of § 1-84b (b).

Second, the administrative law judge concluded that he could allocate the escrowed attorney's fee between the appellant and the appellee, notwithstanding the appellant's allegation of a § 1-84b (b) violation over which the commission lacked jurisdiction, because "such an allegation would be immaterial to this commission's allocation of the awarded fee." The appellant had cited *Parnoff* v. *Yuille*, 163 Conn. App. 273, 136 A.3d 48, cert. denied, 321 Conn. 902, 138 A.3d 280 (2016)—in which this court held that an attorney who was barred from contract recovery under a fee agreement because of the agreement's failure to comply with General Statutes § 52-251c, a fee cap statute, could not recover under a theory of quantum meruit—to support its position that there was a "public policy against using quantum meruit by one who has unclean hands," but the administrative law judge concluded that *Parnoff* was distinguishable from the present case. In particular, he explained that allowing recovery in *Parnoff* would "not

just have violated *a* public policy, it would have violated *the* legislative policy behind § 52-251c"—to "protect plaintiffs from overreaching attorneys"—"and would have done so to the detriment of the very person the statute was designed to protect." (Emphasis in original; internal quotation marks omitted.) He also reasoned that, unlike in the Superior Court, where *Parnoff* had arisen and where judges lack "primary oversight authority" over attorney's fees, "[t]he power and duty to protect claimants against overreaching attorneys is expressly conferred on the judges of this commission by statute . . . ." He then concluded that the claimant could not be said to be affected by any violation of § 1-84b because, when Watson had approved a final fee of $185,247 in 2019, he had "protected [the claimant's] rights and forever liquidated her obligations under *any* fee agreement," rendering "the contents of the fee agreement between [the claimant] and [the appellee] a moot point . . . ." (Emphasis in original.) He determined that the appellant was seeking to interfere with the appellee's collection of a fee, not in order to protect the claimant or to protect the ethical integrity of the state or commission, but simply to protect its own pecuniary interests.

The administrative law judge further concluded that there was "no basis for disqualification of this entire commission simply because of Walker's past membership" and rejected various allegations made by the appellant that the administrative law judge had manipulated the proceedings in favor of the appellee and otherwise shown personal bias against the appellant. He also determined that the claimant lacked standing to participate in proceedings regarding the fee allocation because once the $185,247 attorney's fee had been deposited into escrow, the claimant's obligation for attorney's fees had been "fully satisfied" and she could have no further

exposure for payment of attorney's fees to either the appellant or the appellee.

The appellant filed a lengthy motion to correct, which was denied save for three scrivener's errors. The appellant then appealed to the board, which affirmed the administrative law judge's decision. The board rejected on their merits four claims of error made by the appellant, namely, that (1) the administrative law judge had violated the appellant's right to due process and fundamental fairness by failing to hold an evidentiary hearing to establish "critical jurisdictional facts"; (2) the commission lacked subject matter jurisdiction "to enforce an approved attorney's fee pursuant to § 31-327 (a) or to modify the attorney's fee approved pursuant to § 31-327 (b) on January 28, 2016"; (3) the appellant's experience of bias from the commission necessitated removal of the fee dispute from that forum; and (4) the administrative law judge had erred in denying the motion to correct. (Internal quotation marks omitted.) The board further declined to review the appellant's claims of error pertaining to alleged violations of § 1-84b (b) because it agreed with the administrative law judge's conclusion that the commission lacked jurisdiction to adjudicate violations of that statute. This appeal followed.

Following oral argument before this court, we ordered the parties to submit two rounds of supplemental memoranda addressing the following issues: (1) whether the appellant has standing to contest the appellee's entitlement to recover a portion of the escrowed attorney's fee on the basis of an alleged violation of § 1-84b (b); and (2) whether the appellant's claim that the appellee should be disentitled to recovery of a portion of the escrowed fee on the basis of an alleged violation of § 1-84b (b) should be dismissed as nonjusticiable on ripeness grounds, in light of the fact that the administrative law judge has not yet decided the fee allocation on the merits. The parties filed supplemental

memoranda in accordance with these orders. We now turn to the merits of the appellant's claims. Additional facts and procedural history will be set forth as necessary.

I

The appellant first claims that the board "improperly affirm[ed] the [administrative law judge's] holding that the expressions of public policy embodied in § 1-84b (b) cannot serve as a basis for denying the [appellee's claim for] quantum meruit recovery of its attorney's fees" and urges us to conclude that the appellee's alleged violation of the statute disentitles it to any portion of the escrowed fee. The appellee argues in response that this claim is inadequately briefed because the appellant has not addressed the jurisdictional conclusion that was the basis of the board's affirmance but, rather, has focused only on "the substantive issue of § 1-84[b] (b)'s applicability to this case." We do not address the merits of these respective arguments because we conclude that the appellant's claim is not ripe for adjudication by this court.

"[J]usticiability comprises several related doctrines, namely, standing, ripeness, mootness and the political question doctrine, that implicate a court's subject matter jurisdiction and its competency to adjudicate a particular matter. . . . Justiciability requires (1) that there be an actual controversy between or among the parties to the dispute . . . (2) that the interests of the parties be adverse . . . (3) that the matter in controversy be capable of being adjudicated by judicial power . . . and (4) that the determination of the controversy will result in practical relief to the complainant. . . .

"A case that is nonjusticiable must be dismissed for lack of subject matter jurisdiction. . . . [B]ecause an issue regarding justiciability raises a question of law, our appellate review [of this question] is plenary. . . .

"[T]he rationale behind the ripeness requirement is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements . . . . Accordingly, in determining whether a case is ripe, a [reviewing] court must be satisfied that the case before [it] does not present a hypothetical injury or a claim contingent upon some event that has not and indeed may never transpire." (Citations omitted; internal quotation marks omitted.) *Cadle Co.* v. *D'Addario*, 111 Conn. App. 80, 82–83, 957 A.2d 536 (2008).

"[Our Supreme Court] has often stated that the question of subject matter jurisdiction, because it addresses the basic competency of the court, can be raised by any of the parties, or by the court sua sponte, at any time. . . . [T]he court has a duty to dismiss, even on its own initiative, any appeal that it lacks jurisdiction to hear. . . . Moreover, [t]he parties cannot confer subject matter jurisdiction on the court, either by waiver or by consent." (Internal quotation marks omitted.) *Lewis* v. *Slack*, 110 Conn. App. 641, 643, 955 A.2d 620, cert. denied, 289 Conn. 953, 961 A.2d 417 (2008). Therefore, although both parties have taken the position that the appellant's claim as to § 1-84b (b) is ripe for adjudication, we retain an independent duty to assess whether the claim is justiciable, affording due consideration to the parties' arguments.

Our analysis is guided by this court's holding in *Miller* v. *Maurer*, 189 Conn. App. 769, 208 A.3d 1249, appeal dismissed, 190 Conn. App. 904, 208 A.3d 702 (2019). In *Miller*, the plaintiff attorney brought an interpleader action to determine the proper distribution of settlement proceeds among herself, her client, and predecessor counsel. Id., 770–71. The trial court rendered judgment awarding the plaintiff 15 percent of the gross recovery; her predecessor counsel an equitable lien on the settlement proceeds and quantum meruit recovery;

and the client the remainder. Id., 773–74. On appeal, the plaintiff claimed that the court improperly determined (1) that she was entitled to 15 percent of the settlement proceeds and (2) that her predecessor counsel was entitled to *any* portion of the settlement proceeds. Id., 771. This court first concluded that the court's finding that the plaintiff was entitled to 15 percent of the proceeds was not clearly erroneous. Id., 776. It then concluded that the plaintiff lacked standing to contest her predecessor counsel's entitlement to a portion of the settlement proceeds and dismissed the appeal with respect to that claim. Id., 779. This court reasoned that, because the trial court had properly concluded that the plaintiff was entitled to 15 percent of the proceeds, "the court's determinations regarding the distribution of the remaining 85 percent of the settlement proceeds cannot be said to adversely affect any cognizable legal interest of the plaintiff. Even if the plaintiff's claim was successful, any reduction in the amount of [predecessor counsel's] recovery would inure to the benefit of [the client], and not to the plaintiff." Id.

We read *Miller* to stand for the proposition that an attorney who seeks to contest successor counsel's entitlement to recover a portion of an escrowed fee can make out a colorable claim of injury from a judicial determination that successor counsel is entitled to some portion of that fee only when she can establish that that determination somehow interferes with her own cognizable legal interest, namely, the fee that she is properly determined to be due following a full proceeding on the merits of the fee allocation. In the present case, because the fee allocation has not yet occurred, the contours of the appellant's interest—that is, what it is due for its services—are not clear, nor is it clear how, if at all, the appellee's entitlement or disentitlement to recovery of a portion of the escrowed

fee might affect that interest. For us to conclude, at this preliminary stage, that the appellant has or has not suffered an actual injury as a result of the administrative law judge's refusal to disqualify the appellee from recovery would thus require us to make assumptions in the absence of a fully developed record.[11]

[11] In its supplemental brief on standing, the appellant attempts to distinguish *Miller* from the present case in several ways. None is convincing.

First, the appellant argues that, "unlike *Miller*, there is no ruling as to the allocation of attorney's fees in this case, and there remains the possibility that the distribution of the attorney's fee award to the appellee will adversely affect the appellant's cognizable legal interest . . . ." Any potential injury to the appellant, however, is merely a *possibility* at this stage and contingent on events that may not occur, and, therefore, it only bolsters our conclusion that the appellant's claim is not yet ripe.

Second, the appellant claims that, because the administrative law judge concluded that the claimant lacked standing to participate in the fee allocation, and because rule 5.4 (a) of the Rules of Professional Conduct prohibits the sharing of legal fees with nonlawyers, no portion of the escrowed fee can revert to the claimant in the event that the administrative law judge enters a ruling disentitling the appellee to recovery; ergo, any share of the fee to which the appellee is disentitled must go to the appellant. The merits of the administrative law judge's ruling regarding the claimant's standing are not before us in this appeal, and we express no view on it. Further, the appellant provides no authority for the proposition that rule 5.4 (a) of the Rules of Professional Conduct prohibits the reversion of a fee *to the client who originally owed it* when a lawyer is found wrongfully to have procured that fee.

Finally, the appellant claims that, unlike *Miller*, in which the trial court found "no evidence of misconduct or professional negligence" by anyone in predecessor counsel's law firm; (internal quotation marks omitted) *Miller* v. *Maurer*, supra, 189 Conn. App. 771; "[n]o such similar finding can reasonably be made regarding the appellee." Any such distinction between *Miller* and the present case would be a distinction without a difference, as the presence or absence of unethical conduct by predecessor counsel had no bearing on the standing analysis in *Miller*. See *Miller* v. *Maurer*, supra, 776–79.

We further note that, throughout its supplemental brief on standing, the appellant asserts that it has been injured by what it characterizes as the "deprivation of a fair and impartial tribunal in violation of [its] right to due process," stemming from the administrative law judge's alleged financial interest in the outcome of the case and his alleged relationship with Walker. We have not questioned the appellant's standing to assert a claim challenging the fairness of the tribunal or the alleged deprivation of its due process rights; we resolve similar claims on their merits later in this opinion.

We are unpersuaded by the appellant's arguments to the contrary. The appellant claims that "the damage to [it] is [already] complete" because, in its view, the appellee has "successfully argued . . . that the liquidation of [the claimant's benefits] into a lump sum extinguished the appellant's earned contingency fee" and, in doing so, has taken advantage of the commission's alleged institutional bias in favor of the appellee—a bias that, the appellant argues, violates its due process rights and that § 1-84b (b) was designed to prevent. This argument reflects a misunderstanding of the issue at bar. As we discuss in parts II, III, and IV of this opinion, the appellant also has claimed on appeal that (1) the 2016 fee approval constituted a nonmodifiable award of fees under § 31-327 (a); (2) the entire commission suffered from a disqualifying conflict of interest; and (3) the appellant was deprived of due process in proceedings before the commission. The question on which we asked the parties to submit supplemental briefing was not whether *those* claims were justiciable—indeed, we resolve those claims on their merits in this opinion. Instead, we specifically asked the parties to address the ripeness of the appellant's claim that the appellee *should be barred from recovering a share of the fee* on the basis of an alleged § 1-84b (b) violation. The appellant's argument therefore responds to a question that we did not raise.

The appellant also contends that we must resolve the question of whether § 1-84b (b) disentitles the appellee from recovery before the fee allocation can proceed on the merits because if we conclude that the appellee has no entitlement to any portion of the award there can be no controversy between the parties and, thus, the commission will lack jurisdiction. There are multiple problems with this argument. First, the argument presumes that the appellant's claim pertaining to § 1-84b (b) is justiciable. Second, the argument is self-defeating;

if a conclusion that the appellee was disentitled to recovery under § 1-84b (b) divested the tribunal of jurisdiction over the fee allocation, it is unclear (and the appellant does not attempt to explain) how the tribunal would nonetheless have jurisdiction to order the entirety of the escrowed fee paid over to the appellant, as the appellant wishes. Third, the appellant has cited no authority for the proposition that, when an appellate tribunal hearing a fee dispute determines that one party is not entitled to any fee, the trial court (or, here, the commission) thereby loses jurisdiction over the dispute. Indeed, if that were so, once this court determined in *Parnoff* v. *Yuille*, supra, 163 Conn. App. 273, that the plaintiff attorney was not entitled to recover under quantum meruit, it would have reversed the judgment of the trial court with direction to dismiss for lack of subject matter jurisdiction, instead of affirming the judgment.[12]

The appellee, for its part, contends that the appellant's claim is ripe because the appellant's claimed

[12] We also reject as unavailing certain related claims made in the appellant's supplemental brief on ripeness. The appellant claims that "a conflicted [administrative law judge's] allocation of [attorney's] fees to [the appellee] who has yet to establish entitlement to those fees does not further judicial economy as the entire process would be a futile exercise if the claims of misconduct were later found to be valid." This argument begs the question. The appellant will be able, in any future appeal from the fee allocation, to assert that the appellee should be disentitled to recovery due to an alleged § 1-84b (b) violation only if it can establish an injury from the administrative law judge's allocation of a portion of the fee to the appellee—the very question on which it is premature for us to pass at this stage. To the extent that the appellant contends that we should consider the merits of disqualifying the entire commission on the basis of an alleged conflict of interest, we do so—and reject the appellant's claim—in part III of this opinion.

We further reject the appellant's argument that "[a]llocating the fees before reaching the merits of disqualification is inconsistent with [our Supreme Court's precedent holding that] the denial of a motion to disqualify a commissioner for bias is appealable to the board." We reach the merits of whether the commission should be disqualified in part III of this opinion, and this argument therefore rests on a faulty premise.

injury—the allocation of some portion of the fee to the appellee—is guaranteed to occur. We decline the appellee's invitation to speculate as to how the administrative law judge will ultimately decide the merits of the fee dispute. See, e.g., *LaSalle Bank, N.A.* v. *Randall*, 125 Conn. App. 31, 33, 6 A.3d 175 (2010) (role of appellate tribunal "is not to guess at possibilities, but to review claims based on a complete factual record" (internal quotation marks omitted)). Even if we were to assume that the appellee is guaranteed to receive a portion of the fee, however, that could only qualify as an actual injury to the appellant if the appellee's receipt of some portion of the fee interfered with the appellant's cognizable legal interest in its own fee. Cf., e.g., *Perez* v. *Commissioner of Correction*, 326 Conn. 357, 387–88, 163 A.3d 597 (2017) (explaining that retroactive application of parole provisions eliminating earned risk reduction credit from calculation of parole eligibility date and allowing Board of Pardons and Paroles to forgo hearing "would not create an actual injury to the petitioner" if "the [Board of Pardons and Paroles] decides to hold a hearing or the petitioner does not have any earned risk reduction credit remaining"). Because that may never occur, any injury to the appellant resulting from any determination regarding the appellee's entitlement to a fee is purely hypothetical. We therefore conclude that this claim is nonjusticiable on ripeness grounds and dismiss the appeal as to this claim.

## II

The appellant next claims that the board improperly rejected its contention that the 2016 fee approval constituted an "award" of attorney's fees that was subject to enforcement in the Superior Court pursuant to § 31-327 (a). The appellant further asserts, in connection with this claim, that the commission lacks the authority to modify, interpret, or extinguish the 2016 fee approval in any manner because, "after the appeal period to

challenge the 2016 fee [approval] expired, it became a binding award that was not subject to later modification or interpretation under [General Statutes] § 31-315."[13] We disagree.[14]

The appellant presented these arguments to the board. The board concluded, as had the administrative law judge, that "§ 31-327 (a) does not apply to just *any* award of fees or expenses. Rather, it applies only to awards of such fees or expenses to *be paid by the*

[13] General Statutes § 31-315 provides: "Any award of, or voluntary agreement concerning, compensation made under the provisions of this chapter or any transfer of liability for a claim to the Second Injury Fund under the provisions of section 31-349 shall be subject to modification in accordance with the procedure for original determinations, upon the request of either party or, in the case of a transfer under section 31-349, upon request of the custodian of the Second Injury Fund, whenever it appears to the administrative law judge, after notice and hearing thereon, that the incapacity of an injured employee has increased, decreased or ceased, or that the measure of dependence on account of which the compensation is paid has changed, or that changed conditions of fact have arisen which necessitate a change of such agreement, award or transfer in order properly to carry out the spirit of this chapter. The administrative law judge shall also have the same power to open and modify an award as any court of the state has to open and modify a judgment of such court. The administrative law judge shall retain jurisdiction over claims for compensation, awards and voluntary agreements, for any proper action thereon, during the whole compensation period applicable to the injury in question."

[14] The appellant presents its argument that § 31-315 does not permit the modification of the 2016 fee approval as a subordinate argument in furtherance of its claim that the board improperly concluded that the 2016 fee approval did not constitute an "award" pursuant to § 31-327 (a). We are not convinced, however, that our resolution of the latter claim on the basis we set forth herein would obviate the need to address the appellant's argument that the 2016 fee approval is nonmodifiable. The clear implication of this nonmodifiability argument appears to be that, even if the appellant cannot seek enforcement of the 2016 fee approval in the Superior Court under § 31-327 (a), and even if jurisdiction lies with the commission to allocate the escrowed fee, the administrative law judge would nonetheless be powerless—in the course of making that allocation—to do anything that might arguably impair what the appellant sees as its rights under the 2016 fee approval. We therefore address the appellant's nonmodifiability argument because it is likely to arise in further proceedings before the administrative law judge.

*employer or insurer and not by the employee. . . .* In the present matter, the transfer of funds contemplated by both the 2016 fee [approval] and the 2019 fee approval flowed directly from the claimant to her attorneys. Thus, even if the [administrative law judge] had chosen to construe the 2016 fee [approval] as an award, it would still not be subject to enforcement in the Superior Court pursuant to § 31-327 (a) because that subsection only pertains to awards of fees or expenses paid by the employer or insurer and not by the employee. . . . Given that the condition precedent for the invocation of § 31-327 (a) was not met, we affirm the [administrative law judge's] finding that under the circumstances of this matter, the 2016 fee [approval] did not constitute an award subject to enforcement in the Superior Court pursuant to § 31-327 (a)." (Emphasis in original; footnote omitted; internal quotation marks omitted.) In a footnote, the board stated: "In light of our affirmance of the administrative law judge's conclusion that the 2016 fee [approval] did not constitute an award, final or otherwise, we decline to address the appellant's arguments relative to whether the [administrative law judge's] actions constituted an erroneous modification (or interpretation) of an award pursuant to . . . § 31-315."

"It is well established that [a]lthough not dispositive, we accord great weight to the construction given to the workers' compensation statutes by the [administrative law judge] and [the] board. . . . A state agency is not entitled, however, to special deference when its determination of a question of law has not previously been subject to judicial scrutiny. . . . [W]hen . . . [a workers' compensation] appeal involves an issue of statutory construction that has not yet been subjected to judicial scrutiny, this court has plenary power to review the administrative decision." (Internal quotation marks omitted.) *Kinsey* v. *World PAC*, 152 Conn. App. 116,

123, 98 A.3d 66 (2014). The parties do not argue that either the applicability of § 31-327 (a) to an administrative law judge's order authorizing a claimant's attorney to deduct a fee from a claimant's periodic benefit payments or the implications of § 31-315 for the modifiability of such an order are questions that have previously been subjected to judicial scrutiny or to the commission's time-tested interpretation. We therefore exercise plenary review over the board's decision. See, e.g., *Schiano* v. *Bliss Exterminating Co.*, 260 Conn. 21, 34, 792 A.2d 835 (2002). Because the appellant's argument pertaining to § 31-315 presents a question of law, and our review is plenary, we review that argument even though the board declined to address it. See, e.g., *Harrigan* v. *Fidelity National Title Ins. Co.*, 214 Conn. App. 787, 798 n.4, 282 A.3d 495, cert. denied, 345 Conn. 964, 285 A.3d 388 (2022).

"When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Internal quotation marks omitted.) *Bridgeport* v. *Freedom of Information Commission*, 222 Conn. App. 17, 48, 304 A.3d 481 (2023), cert. denied, 348 Conn. 936, 306 A.3d 1072 (2024). "Because [e]very word and phrase [of a statute] is presumed to have meaning . . . [a statute] must be construed, if possible, such that no clause, sentence or word shall be superfluous, void or insignificant." (Internal quotation

marks omitted.) *Lopa* v. *Brinker International, Inc.*, 296 Conn. 426, 433, 994 A.2d 1265 (2010). "It is axiomatic that [w]e must interpret the statute so that it does not lead to absurd or unworkable results." (Internal quotation marks omitted.) *Wilkins* v. *Connecticut Childbirth & Women's Center*, 314 Conn. 709, 723, 104 A.3d 671 (2014). In the context of workers' compensation appeals, we are mindful that the Workers' Compensation Act, General Statutes § 21-275 et seq., "is a remedial statute that should be construed generously to accomplish its purpose. . . . The purposes of the act itself are best served by allowing the remedial legislation a reasonable sphere of operation considering [its] purposes. . . . In appeals arising under workers' compensation law, we must resolve statutory ambiguities or lacunae in a manner that will further the remedial purpose of the act." (Citations omitted; internal quotation marks omitted.) *Driscoll* v. *General Nutrition Corp.*, 252 Conn. 215, 220–21, 752 A.2d 1069 (2000).

Section 31-327 (a) provides in relevant part that, "[w]henever any fees or expenses are, under the provisions of this chapter, to be paid by the employer or insurer *and not by the employee*, the administrative law judge may make an award directly in favor of the person entitled to the fees or expenses, which award shall be filed in court, shall be subject to appeal and shall be enforceable by execution as in other cases. . . ." (Emphasis added.) On its face, the statute authorizes administrative law judges to render an enforceable "award" of attorney's fees when the employer or insurer is liable for those fees but expressly does *not* authorize the entry of such an "award" when an employee—such as the claimant in the present case—is liable. Other provisions of the Workers' Compensation Act specify various circumstances in which an employer or insurer may be held liable for the payment of attorney's fees, as § 31-327 (a) contemplates. See, e.g., General Statutes

§ 31-290a (b) (prevailing employee in proceeding before commission alleging, inter alia, retaliation for filing workers' compensation claim shall be awarded reasonable attorney's fees); General Statutes § 31-300 (administrative law judge may allow claimant reasonable attorney's fees when employer or insurer has unreasonably contested liability, when adjustments or payments of compensation have been unduly delayed, or where payments have been discontinued or reduced without proper notice and approval of administrative law judge). We are satisfied that the language of § 31-327 (a) is clear and unambiguous in this regard and that it does not produce absurd or unworkable results. Nor does the appellant argue to the contrary. We therefore do not consider extratextual evidence of the statute's meaning.

The appellant contends that this clear statutory language does not place the 2016 fee approval outside the purview of § 31-327 (a) because the 2016 fee approval required The Hartford—an insurer—to send the claimant's weekly check directly to the appellant so that the appellant could deduct a fee. As both the administrative law judge and the board recognized, however, the fee in question was owed by the claimant and was deducted from her benefit check. The claimant's liability for attorney's fees did not transfer to The Hartford simply because the commission directed The Hartford to take steps to administratively facilitate the claimant's compliance with her obligation. Even if The Hartford can be said, as the appellant argues, to have been "directly implicate[d]" in the payment of the fee, § 31-327 (a) does not give rise to an enforceable award when an insurer is merely "implicated" in the payment of a fee— it does so when the fee is to be paid by an employer or insurer, *and not by an employee*. Because, as the board aptly concluded, "the transfer of funds contemplated by . . . the 2016 fee [approval] . . . flowed

directly from the claimant to her attorneys," the 2016 fee approval did not constitute an award of attorney's fees enforceable in the Superior Court pursuant to § 31-327 (a).[15]

We now turn to the appellant's argument that the 2016 fee approval may not be modified, interpreted, or extinguished. Specifically, the appellant contends that § 31-315—which sets forth the circumstances under which an administrative law judge may modify an award of, or voluntary agreement concerning, "compensation"—limits the administrative law judge's authority to modify the 2016 fee approval. In support of this assertion, the appellant points to our Supreme Court's statement in *Marone* v. *Waterbury*, 244 Conn. 1, 707 A.2d 725 (1998), that, "[a]lthough the commission may modify awards under certain circumstances, its power to do so is strictly limited by statute." Id., 15. The appellant further argues that, because our Supreme Court in *Schiano* v. *Bliss Exterminating Co.*, supra, 260 Conn. 21, interpreted the term "compensation," as used in § 31-315 and elsewhere in the workers' compensation statutes, to exclude attorney's fees; see id., 37–41; the administrative law judge has no authority to modify or interpret the 2016 fee approval in any manner. The appellant therefore contends that, "after the appeal period to challenge the 2016 fee [approval] expired, it became a binding award that was not subject to later modification or interpretation under § 31-315."

[15] The appellant makes other arguments in support of its claim that the 2016 fee approval constituted an award of attorney's fees enforceable in the Superior Court pursuant to § 31-327 (a). In particular, the appellant argues that its "approved attorney's fee award . . . comes under the jurisdiction of § 31-327 (a)" because it "is both quantifiable and vested" and that "the 2016 fee approval solidified [the appellant's] earned contingency fee . . . ." Because our conclusion that the 2016 fee approval contemplated a transfer of funds from the claimant to the appellant is dispositive of the appellant's contention that the 2016 fee approval constituted an award under § 31-327 (a), we need not address these subordinate arguments.

We are not persuaded. The appellant's argument rests on the premise that § 31-315—a statute that, as the appellant admits, does not address attorney's fees—provides the only conceivable statutory authority under which the administrative law judge could take any action that might somehow interfere with the 2016 fee approval. This premise is unsound. In particular, § 31-327 (b) provides that "[a]ll fees of attorneys . . . for services under this chapter shall be subject to the approval of the administrative law judge." Section 31-327 (b), on its face, appears to be a much more obvious source than § 31-315 of an administrative law judge's authority, during the life of a workers' compensation claim, to revisit prior orders ratifying fee arrangements between claimants and their counsel. The appellant makes no attempt to reconcile its position with the broad power over attorney's fees that § 31-327 (b) confers.

The appellant's argument is foreclosed by the plain text of § 31-327 (b) and binding precedent. Section 31-327 (b) provides that "[a]ll" attorney's fees are subject to the administrative law judge's approval. This court repeatedly has declined to "read into th[is] unambiguous statute an exception to the word 'all.' " *Frantzen* v. *Davenport Electric*, supra, 179 Conn. App. 853; see also *Prioli* v. *State Library*, 64 Conn. App. 301, 309, 780 A.2d 172 (citing with approval board decision concluding that "[i]t would be inconsistent with both the clear meaning of those definitions and the humanitarian purpose of the Workers' Compensation Act in general to read § 31-327 (b) as limiting the authority of commissioners to oversee attorney's fees" (internal quotation marks omitted)), cert. denied, 258 Conn. 917, 782 A.2d 1246 (2001). Were we to adopt the appellant's reasoning, however, we would be doing just that. According to the appellant, once an administrative law judge has exercised authority under § 31-327 (b) to approve a

fee arrangement during the life of an open workers' compensation case, the administrative law judge is divested of authority either to approve later fee arrangements or to render final fee allocations between successive counsel, unless he or she first determines that those arrangements or allocations will not somehow "modify," "interpret," or "extinguish" the original arrangement that he or she approved. This proposition finds no support in the unambiguous statutory text or in this court's case law interpreting § 31-327 (b); indeed, it runs directly contrary to both.

For the foregoing reasons, we reject the appellant's claims that the 2016 fee approval constituted an award of attorney's fees under § 31-327 (a) and that the administrative law judge lacks the authority to modify, interpret, or extinguish the 2016 fee approval in any manner.

## III

The appellant next claims that the entire commission improperly refused to disqualify itself from hearing this matter. In support of this claim, the appellant—relying on our Supreme Court's decision in *Low* v. *Madison*, 135 Conn. 1, 60 A.2d 774 (1948)—argues that "the commission's decision over whether to enforce the public policy expressed in [§ 1-84b (b)]" by denying the appellee recovery of a portion of the escrowed fee implicated the "personal and pecuniary interest[s]" of every administrative law judge on the commission, giving rise to a conflict of interest on the part of the commission as a whole. We are not persuaded.

When presented with the appellant's claim that the entire commission should be disqualified, the administrative law judge concluded in relevant part that such an outcome would contravene our Supreme Court's holding in *Dacey* v. *Connecticut Bar Assn.*, 170 Conn. 520, 368 A.2d 125 (1976). In particular, the administrative law judge reasoned: "As our Supreme Court has

noted, [d]isqualification must yield to necessity where to disqualify would destroy the only tribunal in which relief could be had and thus preclude determination of the issue. . . . In the matter before me, the Superior Court is waiting for a decision from this commission. If this commission has jurisdiction, it must act. The issues before me now, and those that will be before me if I hear the case on the merits, are questions of fact and law. All parties and counsel stand on equal footing. *Some* commissioner must hear this matter." (Citation omitted; emphasis in original; internal quotation marks omitted.) The board agreed, explaining that "we are aware of no other tribunal which has the jurisdiction to hear this matter, as it falls well within the province of the Workers' Compensation Act, and the Superior Court has stayed its proceedings pending a decision by this commission."

The following legal principles are relevant to our review of the appellant's claim. In *Low* v. *Madison*, supra, 135 Conn. 1, our Supreme Court declared that "the appearance of impropriety created by a public official's[16] participation in a matter in which he has a

---

[16] We are unaware of any case in which this court or our Supreme Court has applied the disqualification standard set forth in *Low* to administrative law judges within the commission. However, although *Low* is typically cited in cases involving attempts to disqualify members of planning or zoning boards; see, e.g., *Stocker* v. *Waterbury*, 154 Conn. 446, 453–54, 226 A.2d 514 (1967) (collecting cases); our Supreme Court has held that the policy underlying *Low* "is not limited to a single category of public officer but applies to all public officials." *Housing Authority* v. *Dorsey*, 164 Conn. 247, 251, 320 A.2d 820, cert. denied, 414 U.S. 1043, 94 S. Ct. 548, 38 L. Ed. 2d 335 (1973). "Three essential characteristics differentiate a public office from private employment: (1) an authority conferred by law; (2) a fixed term of office; and (3) the power to exercise some portion of the sovereign functions of government." Id. Administrative law judges within the commission appear to satisfy all three criteria. See, e.g., General Statutes § 31-278 (setting forth powers and duties of administrative law judges); General Statutes § 31-276 (a) (providing that administrative law judges shall serve for term of five years); see also *Nelson* v. *State*, 99 Conn. App. 808, 813, 916 A.2d 74 (2007) ("the legislature, by creating the workers' compensation commission and the board, has entrusted to them the primary responsibility of determining

pecuniary or personal interest is sufficient to require disqualification. . . . This prophylactic rule serves the salutary purposes of promoting public confidence in the fairness of the decision-making process and preventing the public official from placing himself in a position where he might be tempted to breach the public trust bestowed upon him. . . . The test is not whether the personal interest does conflict but whether it reasonably might conflict." (Citations omitted; footnote added; internal quotation marks omitted.) *Petrowski* v. *Norwich Free Academy*, 199 Conn. 231, 241, 506 A.2d 139, appeal dismissed, 479 U.S. 802, 107 S. Ct. 42, 93 L. Ed. 2d 5 (1986). "The decision as to whether a particular interest is sufficient to disqualify is necessarily a factual one and depends on the circumstances of the particular case." *Nazarko* v. *Conservation Commission*, 50 Conn. App. 548, 553, 717 A.2d 850, cert. denied, 247 Conn. 940, 723 A.2d 318 (1998), and cert. denied, 247 Conn. 940, 723 A.2d 318 (1998). "Therefore, our prior cases have implicitly required a litigant to show the existence of a fact or set of facts that might reasonably be viewed as having an improper influence on the public official." *Gaynor-Stafford Industries, Inc.* v. *Water Pollution Control Authority*, 192 Conn. 638, 650, 474 A.2d 752, cert. denied, 469 U.S. 932, 105 S. Ct. 328, 83 L. Ed. 2d 265 (1984).

Even when an adjudicator would otherwise be disqualified, however, our Supreme Court has held that "[d]isqualification must yield to necessity where to disqualify would destroy the only tribunal in which relief could be had and thus preclude determination of the issue." (Internal quotation marks omitted.) *Dacey* v. *Connecticut Bar Assn.*, supra, 170 Conn. 524. This rule,

---

workers' compensation claims"). We therefore conclude that the standard for disqualification in *Low* applies to administrative law judges within the commission.

known as the "doctrine of necessity," applies in administrative tribunals as well as courts. See *Clisham* v. *Board of Police Commissioners*, 223 Conn. 354, 375, 613 A.2d 254 (1992). This court has found the doctrine of necessity applicable to cases in which a party seeks the disqualification of an entire tribunal and has endorsed the "maxim of law to the effect that where all [judges] are disqualified, none are disqualified." (Internal quotation marks omitted.) *State* v. *Fuller*, 56 Conn. App. 592, 630, 744 A.2d 931, cert. denied, 252 Conn. 949, 748 A.2d 298, cert. denied, 531 U.S. 911, 121 S. Ct. 262, 148 L. Ed. 2d 190 (2000); see also 48A C.J.S., Judges § 235 (2024) ("The rule of necessity applies with particular force where all judges are arguably disqualified. In short, where all are disqualified, none are disqualified. Therefore, where a particular conflict of interest in a case applies equally to all state court judges, the justices are not disqualified for such conflict under the rule of necessity." (Footnotes omitted.)).

The appellant's claim that the entire commission should have disqualified itself is foreclosed by the doctrine of necessity. We are aware of no forum, and the appellant has identified none, in which the fee dispute between the appellant and the appellee properly could be resolved if the entire commission were to be disqualified. This court has held that the adjudication of fee disputes between successive counsel concerning their representation of a claimant before the commission rests squarely within the jurisdiction of the commission and that the Workers' Compensation Act does not permit attorneys to resolve such disputes via a civil action in the Superior Court, with its attendant right to a jury trial.[17] See *Frantzen* v. *Davenport Electric*, supra, 179 Conn. App. 855–56 ("Abrogation of the common-law

---

[17] We note, moreover, that for the reasons we have set forth in part II of this opinion, the 2016 fee approval does not constitute an award subject to enforcement in the Superior Court under § 31-327 (a).

tort action, with its attendant right to jury trial, is the necessary result of an effective administrative remedy . . . [and] a jury trial on the subordinate issue of attorney's fees would partly defeat the purpose of the Workers' Compensation Act. As stated in a slightly different context more than one hundred years ago: If the [a]ct permits each cause to be appealed and tried de novo in the Superior Court, its objects will be defeated . . . ." (Citation omitted; internal quotation marks omitted.)). Although the commission's governing statutes allow for the designation of other administrative law judges to hear cases when one is disqualified; see General Statutes §§ 31-278 and 31-280 (b); the conflict of interest asserted by the appellant would apply equally to all administrative law judges within the commission, rendering this statutory remedy futile. Because disqualification of the entire commission would "destroy the only tribunal in which relief could be had" on this fee dispute under our workers' compensation scheme; (internal quotation marks omitted) *Dacey* v. *Connecticut Bar Assn.*, supra, 170 Conn. 524; the appellant's claim fails.

IV

Finally, the appellant claims that the board improperly overlooked the administrative law judge's violation of its due process right to be heard. We disagree.

In broad strokes, the appellant's argument proceeds as follows. The administrative law judge's denial of the appellant's motions to dismiss and for a stay of proceedings hinged on his resolution of certain "critical factual disputes," namely: (1) whether the claimant was receiving permanent total incapacity benefits or temporary total incapacity benefits at the time of the 2016 fee approval; see footnote 7 of this opinion; and (2) whether the entire commission should have been disqualified because every administrative law judge on the

commission had a personal interest in how the question of Walker's entitlement to recover a portion of the fee would be resolved. In resolving these disputes, the administrative law judge refused to hold an evidentiary hearing at which the parties would have the opportunity to introduce exhibits of their own and, instead, relied on his own "handpicked evidentiary record"—i.e., the forty-three items of which he took administrative notice during the June 23, 2021 hearing. Therefore, the appellant was deprived of its right to be heard in a meaningful manner on the jurisdictional issues it raised in its motions to dismiss and for a stay of proceedings.

Some additional procedural history is necessary to understand the appellant's claim. Among the various exhibits that the parties sought to introduce at the June 23, 2021 hearing was a copy of the claimant's February 16, 2018 benefit check from The Hartford that referred to her benefits as "[p]ermanent [t]otal [d]isability," as well as a copy of a December 28, 2015 contingency fee agreement between the claimant and the appellant that referred to the claimant as "a permanent tt." As the administrative law judge was marking the appellee's exhibits during the June 23, 2021 hearing, the appellant's counsel inquired of the appellee's counsel as to the relevance of two pages of one of the appellee's proffered exhibits, which included the aforementioned February 16, 2018 benefit check. The following colloquy ensued:

"[The Administrative Law Judge]: All right. It's a fair point. What's the purpose of the offer?

"[The Appellee's Counsel]: Just to demonstrate the ongoing preservation of the fees consistent with the order. I can get that through testimony if necessary. I'm just trying to make it—

"[The Administrative Law Judge]: Look—

"[The Appellee's Counsel]: Essentially, I'm trying to establish that the [appellant] continue[s] to be paid [its]

20 percent fee off the [permanent total] benefits through the time of the settlement approval. If we agree on that, then there's no point to these.

"[The Administrative Law Judge]: Okay. Is there any disagreement about that, Attorney Levine?

"[The Appellant's Counsel]: No. That she was being paid permanent total disability, and that the payments continued up until the date of the stipulation, I have no problem. I will agree to that.

"[The Administrative Law Judge]: Well then, perhaps the check, the check does, well—the check indicate[s] permanent and total disability. If you don't want these in—I don't frankly know that it makes—

"[The Appellant's Counsel]: I have no problem knowing that that's the relevance.

"[The Administrative Law Judge]: Okay. Without objection, then, full exhibit J."

As we previously have explained, later in the June 23, 2021 hearing the administrative law judge determined that he could not determine which exhibits would be material until he could identify the issues that were properly subject to litigation before the commission. He therefore suspended the marking of exhibits and designated all exhibits proffered by the parties as being for identification only, including those that had previously been marked as full. As such, the record on which the administrative law judge relied in ruling on the appellant's motions to dismiss and for a stay of proceedings contained the forty-three items of which he had taken administrative notice but did not contain any of the parties' proffered exhibits.

By letter dated June 28, 2021, the administrative law judge requested supplemental briefing from the parties on certain legal issues pertaining to § 1-84b (b). In its

brief submitted in response to this letter, the appellant asserted—citing the colloquy between counsel and the administrative law judge, as well as the appellee's proffered exhibit containing the February 16, 2018 benefit check—that "[i]t is undisputed that [the claimant] was being paid permanent total disability benefits at least since [Salerno] approved [the appellant's] 20 percent fee of [the claimant's] weekly indemnity benefits on January 28, 2016." The appellant also appeared to take the position that the allegedly "permanent" character of the claimant's benefits at the time of the 2016 fee approval was relevant—for reasons that it did not clearly specify—to the 2016 fee approval's status as an "award" subject to enforcement in the Superior Court under § 31-327 (a).

In his memorandum of decision, the administrative law judge addressed certain statements that the appellant had made in its brief, including its claim that it was "undisputed" that the claimant had been receiving permanent total incapacity benefits since the 2016 fee approval. The administrative law judge wrote: "It is undisputed that the [appellant] was getting 20 percent of [the claimant's] weekly total incapacity checks until the point of settlement; that was stipulated by the parties on the record and will be so found on that basis. As for the assertion that the claimant was on 'permanent total disability,' however, that is not something of which I could take notice because there is no award in the file to which I might refer. (Indeed . . . the contemporaneous references at the time were to temporary total incapacity.)" Elsewhere in his memorandum of decision, the administrative law judge referred to the claimant's benefits at the time of the 2016 fee approval as "temporary total disability" payments.

On appeal to the board, the appellant argued that "the foundation of the [administrative law judge's] rulings is premised on his jurisdictional factual finding that

[the 2016 fee approval] was based on the claimant's entitlement to temporary total disability benefits rather than permanent total disability benefits." It further contended that the administrative law judge had deprived it of due process and fundamental fairness because this "jurisdictional factual finding" was "derived from [the administrative law judge's] own creation of the evidentiary record, whereby he chose which facts he would consider by way of administrative notice and did so with the express exclusion of the parties' ability to present evidence or cross-examine adverse witnesses." The board rejected this claim. It concluded that the transcript of the June 23, 2021 hearing "provides no basis for the inference that had either of the parties sought the submission of additional exhibits into the record for the [administrative law judge's] administrative notice, such a request would have been automatically denied" and that "the administrative law judge's decisions in this matter relative to the admission of exhibits were consistent with the powers afforded him by [General Statutes] §§ 31-278 and 31-298."[18]

Before this court, the appellant reiterates the claim that it made to the board and further asserts that the

[18] General Statutes § 31-278 provides in relevant part: "Each administrative law judge shall, for the purposes of this chapter, have power to summon and examine under oath such witnesses, and may direct the production of, and examine or cause to be produced or examined, such books, records, vouchers, memoranda, documents, letters, contracts or other papers in relation to any matter at issue as he may find proper, and shall have the same powers in reference thereto as are vested in magistrates taking depositions and shall have the power to order depositions pursuant to section 52-148. . . ."

General Statutes § 31-298 provides in relevant part: "In all cases and hearings under the provisions of this chapter, the administrative law judge shall proceed, so far as possible, in accordance with the rules of equity. He shall not be bound by the ordinary common law or statutory rules of evidence or procedure, but shall make inquiry, through oral testimony, deposition testimony or written and printed records, in a manner that is best calculated to ascertain the substantial rights of the parties and carry out the provisions and intent of this chapter. . . ."

administrative law judge's alleged due process violation also tainted his ruling on the question of whether the commission should be disqualified.[19] The appellant's lengthy explanation of how the nature of the claimant's benefits as of the 2016 fee approval—permanent total incapacity versus temporary total incapacity—is relevant to the issue of the commission's jurisdiction is not a model of clarity. Indeed, it is not entirely clear if the appellant is itself advancing this relevancy argument or is merely ascribing such reasoning to the board and the administrative law judge. What is clear is that—in the appellant's view—the question of whether the claimant's benefits at the time of the 2016 fee approval were temporary total incapacity benefits, or permanent total incapacity benefits, is (and/or was regarded by the commission as) legally relevant to the question of whether the 2016 fee approval constituted an award of attorney's fees subject to enforcement in the Superior Court pursuant to § 31-327 (a).[20]

---

[19] Although the appellant did not raise this latter portion of its claim in its operative brief to the board, we exercise our discretion to review it. We do so because (1) the record is adequate for review, in that there is no need for additional proceedings or fact-finding to determine the merits of the claim; (2) the parties have had an opportunity to be heard on the issue, because the appellant raised this claim in its principal appellate brief and the appellee responded to the appellant's arguments in its own brief; and (3) for the reasons we set forth in this part IV, the appellant cannot prevail on this claim, and thus our consideration of the claim would not prejudice the appellee. See, e.g., *Kinity* v. *US Bancorp*, 212 Conn. App. 791, 812–14, 277 A.3d 200 (2022); see also *Northrup* v. *Witkowski*, 332 Conn. 158, 186 n.20, 210 A.3d 29 (2019) (considering abandoned claim where plaintiffs who had raised claim could not prevail and defendants had briefed claim).

[20] Specifically, the appellant states in its principal appellate brief: "Here, the underlying, albeit limited, evidence supports the undeniable conclusion that the [2016 fee approval] constituted an enforceable award under § 31-327 (a). At the time of the 2016 fee approval, the appellant had a fully earned contingency fee. Significantly, the payment of the appellant's earned attorney's fee continues after his discharge with two additional commissioner orders enforcing this entitlement. The payments improperly cease upon the commissioner's award of the stipulation. The [board's] disavowal of the appellant's earned contingency fee is achieved by . . . mischaracterizing the claimant's indemnity benefit as temporary total absent any evidence to support that finding . . . ."

The following legal principles are relevant to our review of the appellant's claim. "When issues of fact are necessary to the determination of a court's jurisdiction, due process requires that a trial-like hearing be held, in which an opportunity is provided to present evidence and to cross-examine adverse witnesses." *Standard Tallow Corp.* v. *Jowdy*, 190 Conn. 48, 56, 459 A.2d 503 (1983). "Whether a party was deprived of his due process rights is a question of law to which appellate courts grant plenary review. . . . The fundamental requisite of due process of law is the opportunity to be heard. . . . The hearing must be at a meaningful time and in a meaningful manner. . . . [T]hese principles require that a [party] have . . . an effective opportunity to defend by confronting any adverse witnesses and by presenting his own arguments and evidence orally. . . . Matters of procedure in compensation cases which do not affect prejudicially the rights of parties, will not avail upon appeal. Unless such rights be thus affected, the form of procedure before the [administrative law judge] is exclusively for his determination. It is only when the rights of parties are prejudicially affected that we will consider on appeal matters of procedure before the [administrative law judge]." (Citations omitted; internal quotation marks omitted.) *Mikucka* v. *St. Lucian's Residence, Inc.*, 183 Conn. App. 147, 160–61, 191 A.3d 1083 (2018).

In the present case, even if we assume arguendo that the administrative law judge's decision to mark all of the parties' exhibits for identification only and to base his ruling solely on the items of which he had taken administrative notice violated due process, any error was harmless. See, e.g., *Turrell* v. *Dept. of Mental Health & Addiction Services*, 144 Conn. App. 834, 844, 73 A.3d 872, cert. denied, 310 Conn. 930, 78 A.3d 857 (2013). As we have explained, the administrative law

judge's conclusion that the appellant lacked an enforce-able award of attorney's fees pursuant to § 31-327 (a) did not rise or fall with his characterization of the claim-ant's benefits as temporary total incapacity benefits versus permanent total incapacity benefits. He set forth multiple independent bases for his conclusion, includ-ing his determination—which the appellant has not per-suasively challenged, and which we have affirmed in part II of this opinion—that § 31-327 (a) applies to awards against an employer or insurer, whereas the 2016 fee approval concerned an obligation owed by the claimant to the appellant.

With respect to the appellant's contention that the administrative law judge's alleged due process violation tainted his determination that there was no basis for disqualifying the entire commission, we note at the out-set that the only specific piece of evidence relevant to disqualification that the appellant claims was improp-erly excluded—the notice of appearance entered by Cantarella before the commission on June 14, 2018—was in fact administratively noticed by the administra-tive law judge and described in his findings of fact. There is no indication from the record that the adminis-trative law judge disregarded Walker's status as a princi-pal of the appellee or Walker's former employment with the commission. To the contrary, at one point in his memorandum of decision the administrative law judge stated that "the connection between Walker and Cantar-ella is at the very heart of what we have been addressing"; at another point, he stated that "[the fact] [t]hat [Walker and I] were once members of the same commission is well known to all counsel in this case, including Attor-ney Levine, who practiced before the both of us." More-over, to the extent that the appellant improperly was prevented from entering any other evidence relevant to the question of whether the entire commission should have been disqualified, the appellant could not have

prevailed on this claim in any event because—as the administrative law judge concluded, and as we discuss in part III of this opinion—it is foreclosed by the doctrine of necessity. The appellant has not offered any convincing argument to the contrary. The appellant's claim is therefore unavailing.

The appeal is dismissed as nonjusticiable on ripeness grounds with respect to the appellant's claim that the Compensation Review Board improperly affirmed the administrative law judge's conclusion that an alleged violation of § 1-84b (b) could not serve as a basis for denying the appellee quantum meruit recovery of a portion of the escrowed attorney's fee; the decision of the Compensation Review Board is affirmed in all other respects.

In this opinion the other judges concurred.