******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

JOSEPHINE S. MILLER *v.* ELISABETH
MAURER ET AL.
(AC 40654)

Prescott, Elgo and Harper, Js.

*Syllabus*

The plaintiff attorney brought an interpleader action to determine the rights
to certain proceeds from a legal settlement that were held in escrow.
The defendant R previously had retained the law firm of the defendant
M, an attorney, to represent her in a federal action seeking damages
from her employer for sexual harassment. Prior to the conclusion of
the federal action, R discharged M's law firm and retained the plaintiff
to represent her in that action pursuant to a retainer agreement that
contained a contingency clause entitling the plaintiff to one third of the
amount recovered. R thereafter settled the federal action. In ordering
distribution of the settlement proceeds, the trial court determined that
the plaintiff was entitled to 15 percent of the proceeds pursuant to a
subsequent agreement between the plaintiff and R in which the contin-
gency fee had been reduced to 15 percent of any recovery. Accordingly,
the trial court rendered judgment ordering 15 percent of the settlement
proceeds to be disbursed to the plaintiff and dividing the remaining 85
percent of the proceeds between M and R, from which the plaintiff
appealed to this court. *Held*:

1. The plaintiff could not prevail on her claim that the trial court improperly
determined that she was entitled to 15 percent of the settlement pro-
ceeds; that court's finding was not clearly erroneous and was supported
by evidence in the record, as the plaintiff averred in her complaint that
she had agreed to reduce her contingency fee due to R's dissatisfaction
with the amount of the settlement, the plaintiff expressly testified that
she had volunteered to reduce her contingency to 15 percent to convince
R to accept the settlement offer, R likewise testified that the plaintiff
had agreed to reduce her fee to 15 percent of any recovery, that modified
agreement reducing the contingency to 15 percent was memorialized
in a letter that was sent by the plaintiff to R and which was admitted
into evidence, and the plaintiff further acknowledged the reduction of
the contingency fee to 15 percent in a letter, also entered into evidence,
that she had sent to the local grievance panel.

2. The plaintiff lacked standing to challenge the trial court's determinations
with respect to M's entitlement to a portion of the settlement proceeds;
in light of this court's conclusion that the trial court properly found that
the plaintiff was entitled to 15 percent of the settlement proceeds, the
plaintiff could not establish a colorable claim of injury resulting from
the court's distribution of the remaining 85 percent of the settlement
proceeds, as neither the trial court's allocation of the remaining proceeds
between M and R, nor the manner by which the court arrived at that
allocation, adversely affected any cognizable legal interest of the
plaintiff.

Argued January 9–officially released May 7, 2019

*Procedural History*

Action for interpleader to determine the rights of
the parties to certain settlement funds, brought to the
Superior Court in the judicial district of Danbury and
tried to the court, *Truglia, J.*; judgment ordering distri-
bution of the funds, from which the plaintiff appealed
to this court. *Appeal dismissed in part; affirmed.*

*Josephine S. Miller*, self-represented, the appellant
(plaintiff).

*Elisabeth Seieroe Maurer*, self-represented, the
appellee (defendant).

*Opinion*

ELGO, J. In this interpleader action, the plaintiff, Attorney Josephine S. Miller, appeals from the judgment of the trial court distributing the proceeds of a legal settlement between the plaintiff, the plaintiff's client, the defendant Lori Rodriguez, and Rodriguez' former legal counsel, the defendant Attorney Elisabeth Maurer.[1] On appeal, the plaintiff challenges (1) the court's finding that she was entitled to 15 percent of the settlement proceeds and (2) the court's determinations with respect to Maurer's entitlement to a portion of those proceeds. We dismiss the plaintiff's second claim for lack of subject matter jurisdiction, and affirm the judgment of the trial court in all other respects.

As the court found in its oral decision,[2] Rodriguez entered into a valid retainer agreement in 2005 with Maurer's law firm, Maurer & Associates, PC (law firm), which agreed to represent Rodriguez in connection with a sexual harassment complaint against her employer, the Bridgeport Housing Authority, and other defendants. Pursuant to the retainer agreement, Rodriguez agreed to pay the law firm a "contingency fee . . . of one third of any recovery" from that action, plus costs.

The court also found that the law firm commenced a federal action on Rodriguez' behalf, "diligently and professionally represented Rodriguez in her claims against all defendants in that action," and "added good value to Rodriguez' claims by, among other things, commencing the action, successfully defending an early motion to dismiss and diligently prosecuting and responding to discovery requests in that action, including compiling and indexing Rodriguez' . . . medical records in support of her claims." The court further found "no evidence of misconduct or professional negligence by anyone in the [law firm] or in its handling" of the action.

While that action was pending, Rodriguez discharged the law firm in December, 2012, and retained the plaintiff to represent her in that action. In releasing Rodriguez' file to the plaintiff, the law firm claimed a lien thereon. By letter dated January 10, 2013, Maurer notified the plaintiff that the law firm had expended significant resources on Rodriguez' behalf and, thus, was asserting a "lien against the file unless adequate protection of its interest in the case is provided in the form of a letter from you stating that you will hold settlement proceeds in escrow pending resolution of the fee dispute."

Rodriguez subsequently agreed to settle her claims against the Bridgeport Housing Authority and received a payment of $128,151.89 in exchange for the withdrawal of her claims. Upon receipt of those funds, the plaintiff disbursed $27,329 to Rodriguez and $4822 to herself; she later deposited the remaining $96,000 with

the clerk of the Danbury Superior Court. This interpleader action followed to determine the proper distribution of the settlement proceeds.

In her complaint, the plaintiff alleged in relevant part that "there exists a genuine dispute regarding ownership of the $96,000 being held" by the court because Maurer "has claimed a lien of $96,000 for work done on the case . . . ." Pursuant to General Statutes § 52-484,[3] the plaintiff therefore requested a judicial determination as to the amount "rightfully owned by each party." The defendants filed their respective answers and all three parties thereafter filed a statement of claim. The plaintiff claimed "a one-third share of the funds now held by the court, based upon the retainer agreement [she] had with [Rodriguez]." Rodriguez, by contrast, claimed that she was entitled to "all the monies awarded to [her] from the Bridgeport Housing Authority except for the 15 [percent] owed to" the plaintiff pursuant to their fee agreement. In her statement of claim, Maurer requested a "proportionate share of the contingency fee (i.e. $42,290.12) based on hours invested," in addition to "[out-of-pocket] expenses of $29,922.92."

A two day court trial was held in July, 2017, at which the plaintiff, Rodriguez, Maurer, and Christopher Avcollie, an attorney with the law firm, testified. Following closing arguments, the court delivered its decision from the bench. With respect to the plaintiff, the court found that she had agreed to a 15 percent fee for any recovery received by Rodriguez and thus concluded that the plaintiff was entitled to "15 percent of the gross amount recovered," which "equals $19,222.78." Because the plaintiff already had received $4822 in settlement proceeds, the court held that she was "entitled to an additional $14,400.78."[4] With respect to Maurer, the court found that her law firm was "entitled to an equitable attorney's charging lien on the settlement proceeds" and "reasonable compensation for its services rendered" in the amount of $23,067.34, as well as $20,632 in costs. As a final matter, the court concluded that "[t]he balance of $37,899.88 is to be distributed to [Rodriguez]." From that judgment, the plaintiff now appeals.[5]

I

We first address the plaintiff's claim that the court improperly determined that she was entitled to 15 percent of the settlement proceeds. We disagree.

"It is well established that [i]n a case tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony. . . . On appeal, we do not retry the facts or pass on the credibility of witnesses. . . . We afford great weight to the trial court's findings because of its function to weigh the evidence and determine credibility. . . . Thus, those findings are binding upon this

court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citations omitted; internal quotation marks omitted.) *De La Concha of Hartford, Inc.* v. *Aetna Life Ins. Co.*, 269 Conn. 424, 431–32, 849 A.2d 382 (2004).

In the present case, the plaintiff introduced into evidence a retainer agreement with Rodriguez dated December 3, 2012, which, the court found, originally entitled the plaintiff to one third of any recovery. The court nevertheless found that the parties subsequently entered into a "later agreement . . . whereby [the plaintiff] agreed to reduce her fee to 15 percent of any recovery." That determination finds ample support in the record before us.

In her complaint, the plaintiff averred in relevant part that "[b]ecause Rodriguez was not satisfied with the $128,000 settlement amount, [the] plaintiff had agreed to reduce her contingency fee."[6] At trial, Rodriguez likewise testified that the plaintiff had agreed to reduce her fee to 15 percent of any recovery. That agreement also is memorialized in a letter that the plaintiff sent to Rodriguez dated October 18, 2016, which was admitted into evidence and captioned "RE: Rodriguez v. Bridgeport Housing Authority Settlement Proceeds." That letter states in full: "Dear [Rodriguez]: This will confirm that, as a courtesy to you, the fractured manner in which this case was handled, and because of the small amount of money that was left under the [Bridgeport] Housing Authority [i]nsurance policy, I agreed to reduce my fee to fifteen (15%). Sincerely, [the plaintiff]." The record also contains a letter that the plaintiff sent to an attorney with the local grievance panel regarding a grievance that Rodriguez had filed, in which the plaintiff states that "[b]ecause [Rodriguez] was not happy with the settlement amount, I voluntarily proposed to reduce my fee from [one third] to [15] percent." Furthermore, toward the end of the two day trial, the court indicated that it was "concerned from your perspective, Attorney Miller, on the 15 percent agreement." In responding to the court's concern, the plaintiff testified that she had volunteered to reduce her fee to 15 percent "in order to get [Rodriguez] to accept the settlement."[7]

The foregoing evidence substantiates the court's finding that the plaintiff was entitled to 15 percent of the settlement proceeds, and we are not left with a definite and firm conviction that a mistake has been made. We therefore conclude that the court's finding was not clearly erroneous.

II

We next consider the plaintiff's challenge to the court's determinations with respect to Maurer's entitlement to a portion of the settlement proceeds.[8] The plaintiff maintains that the court erroneously found that Maurer was entitled to *any* settlement proceeds. In addition, the plaintiff claims that the court improperly applied the terms of the retainer agreement between the law firm and Rodriguez, rather than "principles of quantum meruit," in calculating the amount of those proceeds.[9] In response, Maurer argues that the plaintiff lacks standing to raise those claims. We agree with Maurer.

It is well established that "a party must have standing to assert a claim in order for the court to have subject matter jurisdiction over the claim. . . . Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . . [Our Supreme Court] has often stated that the question of subject matter jurisdiction, because it addresses the basic competency of the court, can be raised by any of the parties, or by the court sua sponte, at any time. . . . [T]he court has a duty to dismiss, even on its own initiative, any appeal that it lacks jurisdiction to hear. . . . Standing . . . is not a technical rule intended to keep aggrieved parties out of court; nor is it a test of substantive rights. Rather it is a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented." (Citations omitted; internal quotation marks omitted.) *Webster Bank* v. *Zak*, 259 Conn. 766, 774, 792 A.2d 66 (2002). "Where a party is found to lack standing, the court is consequently without subject matter jurisdiction to determine the cause." (Internal quotation marks omitted.) *J.E. Robert Co.* v. *Signature Properties, LLC*, 309 Conn. 307, 318, 71 A.3d 492 (2013). Our review of the question of the plaintiff's standing is plenary. See *West Farms Mall, LLC* v. *West Hartford*, 279 Conn. 1, 12, 901 A.2d 649 (2006).

"When standing is put in issue, the question is whether the person whose standing is challenged is a proper party to request an adjudication of the issue. . . . Standing requires no more than a colorable claim of injury; a [party] ordinarily establishes . . . standing by allegations of injury. Similarly, standing exists to attempt to vindicate arguably protected interests. . . . Standing is established by showing that the party claiming it is authorized by statute to bring suit or is classically aggrieved. . . . The fundamental test for determining aggrievement encompasses a well-settled

twofold determination: first, the party claiming aggrievement must successfully demonstrate a specific, personal and legal interest in [the subject matter of the challenged action], as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the [challenged action]. . . . Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected." (Internal quotation marks omitted.) *Smith* v. *Snyder*, 267 Conn. 456, 460–61, 839 A.2d 589 (2004).

The present case involves an interpleader action to determine the proper distribution of the settlement proceeds. In part I of this decision, we concluded that the trial court properly found that the plaintiff was entitled to 15 percent of those proceeds. Accordingly, the court's determinations regarding the distribution of the remaining 85 percent of the settlement proceeds cannot be said to adversely affect any cognizable legal interest of the plaintiff. Even if the plaintiff's claim was successful, any reduction in the amount of Maurer's recovery would inure to the benefit of Rodriguez, and not to the plaintiff. For that reason, the plaintiff cannot establish a colorable claim of injury from either the court's allocation of the remaining proceeds between Maurer and Rodriguez or the manner by which the court arrived at that allocation. We therefore conclude that the plaintiff lacks standing, which deprives this court of subject matter jurisdiction over those claims.

The appeal is dismissed with respect to the plaintiff's challenge to the court's determinations regarding Maurer's entitlement to a portion of the settlement proceeds; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] For purposes of clarity, we refer to Lori Rodriguez and Elisabeth Maurer collectively as the defendants and individually by name. We further note that the trial case caption, transcripts, and various pleadings appear to contain a scrivener's error, as Maurer's first name is spelled incorrectly as "Elizabeth" rather than "Elisabeth." As Maurer stated in her answer to the plaintiff's complaint, she is "correctly known as Elisabeth Seieroe Maurer" and is an attorney licensed to practice law in this state.

[2] By order dated July 7, 2017, the court rendered judgment in accordance with the signed transcript of its oral decision delivered earlier that day.

[3] General Statutes § 52-484 provides: "Whenever any person has, or is alleged to have, any money or other property in his possession which is claimed by two or more persons, either he, or any of the persons claiming the same, may bring a complaint in equity, in the nature of a bill of interpleader, to any court which by law has equitable jurisdiction of the parties and amount in controversy, making all persons parties who claim to be entitled to or interested in such money or other property. Such court shall hear and determine all questions which may arise in the case, may tax costs at its discretion and, under the rules applicable to an action of interpleader, may allow to one or more of the parties a reasonable sum or sums for counsel fees and disbursements, payable out of such fund or property; but no such allowance shall be made unless it has been claimed by the party in his complaint or answer."

[4] Following the commencement of this appeal, the trial court granted

Maurer's motion to terminate the appellate stay. The plaintiff thereafter filed a motion requesting the release of her $14,400 disbursement by the Superior Court. In its November 26, 2018 memorandum of decision, the court explained that it had "intended that its prior ruling would affect the appellate stay as to all three parties." The court then ordered "[t]he clerk of the court . . . to disburse the remaining settlement proceeds held on deposit . . . in the amount of $14,400.78 to [the plaintiff]. The clerk is ordered to disburse the funds on or before December 17, 2018."

[5] Rodriguez has not filed a brief in this appeal and did not participate in oral argument.

[6] Despite that admitted agreement with Rodriguez, the plaintiff further alleged in her complaint that "if [Maurer] now insists upon sharing in the settlement funds, [the plaintiff] reserves the right to claim her full one-third share of any proceeds."

[7] At trial, the plaintiff also alleged that she reduced her fee in part due to Maurer's agreement to waive her claim to a share of the settlement proceeds. The record before us contains no evidence of any such agreement. To be sure, the record contains a letter addressed to the plaintiff dated December 29, 2015, in which Maurer stated in relevant part that she would consider waiving the "lien [on the settlement proceeds] in exchange for a release of claims signed by [Rodriguez]." At trial, Maurer testified that she made that overture because she did not want "to have to face a malpractice claim or a grievance." It nevertheless is undisputed that no release of claims ever transpired; rather, Maurer subsequently had to defend both a grievance complaint (grievance complaint no. 16-0664), which was dismissed for lack of probable cause on January 13, 2017, as well as a malpractice action. See *Rodriguez* v. *Maurer*, Superior Court, judicial district of Danbury, Docket No. CV-16-6019763-S (September 6, 2016). For that reason, the trial court understandably declined to find that Maurer had agreed to waive her legal interest in the settlement proceeds in this case.

[8] To be precise, the court in its oral decision found that the law firm was entitled to a portion of the settlement proceeds. It nonetheless remains that the plaintiff named Maurer, rather than the law firm, as a defendant in this interpleader action, and no meaningful distinction thereafter was drawn between Maurer and the law firm with respect to the proper distribution of settlement proceeds. Because the parties raised no objection at trial and have pursued no claim on appeal regarding that distinction, we do not consider it further.

[9] The plaintiff did not file a reply brief in this appeal, and her principal appellate brief is not a model of clarity with respect to this latter contention. As best we can tell, that claim pertains solely to the court's alleged failure to apply principles of quantum meruit in measuring the extent of *Maurer's* entitlement to settlement proceeds. The caption to her claim broadly states that "the trial court erred in applying the terms of the retainer contracts rather than the principles of quantum meruit." The plaintiff quotes *Cooke* v. *Thresher*, 51 Conn. 105, 107 (1883), for the proposition that an attorney may only enforce the provisions of a contingency fee agreement if that attorney "conducts the suit to a favorable conclusion"; id.; and argues that an attorney who is discharged "prior to the occurrence of the contingency is limited to quantum meruit recovery . . . ." (Emphasis omitted; internal quotation marks omitted.) The plaintiff then asserts that "[t]he result obtained by [Maurer] during the course of her handling of [Rodriguez'] action must necessarily be a factor in deciding 'how much she deserved' " before concluding that "[t]he facts and circumstances of [Maurer's] handling of [Rodriguez'] case . . . do not warrant application of the equitable doctrine of quantum meruit."

At no point in her appellate brief does the plaintiff distinctly argue that the court should have applied the doctrine of quantum meruit to determine *her own portion* of the settlement proceeds. Furthermore, the plaintiff never raised that claim before the trial court. To the contrary, the plaintiff specifically averred in her June 2, 2017 statement of claim that she was seeking recovery of settlement funds pursuant to "the retainer agreement that [she] had with [Rodriguez]." She, therefore, is foreclosed from arguing otherwise for the first time in this appeal. See *Lee* v. *Stanziale*, 161 Conn. App. 525, 538–39, 128 A.3d 579 (2015), cert. denied, 320 Conn. 915, 131 A.3d 750 (2016), and cases cited therein.