******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

RANDALL PAQUETTE *v.* GARY THOMPSON
ET AL.
(AC 47625)

Elgo, Suarez and Seeley, Js.

*Syllabus*

The defendants appealed from the trial court's judgment awarding the proceeds from the sale of certain real property to the plaintiff in the plaintiff's interpleader action. They claimed, inter alia, that the court erred in determining that the plaintiff was the sole member of the defendant W Co., a limited liability company, after the defendant T transferred all of his membership interest in W Co. to the plaintiff in 2009. *Held*:

The trial court properly determined that the plaintiff was the sole member of W Co., as this case was governed by the provisions of the Connecticut Limited Liability Company Act ((Rev. to 2009) § 34-100 et seq.) and not the Connecticut Uniform Limited Liability Company Act (§ 34-243 et seq.), which became effective July 1, 2017, well after T had transferred all of his membership interest to the plaintiff.

The trial court's finding that the plaintiff, and not W Co., was entitled to the disputed funds was not clearly erroneous, as the plaintiff was the sole member of W Co. at the time of the sale of the subject property in 2021.

Argued October 16, 2025—officially released April 7, 2026

*Procedural History*

Action for interpleader to determine the parties' rights to certain funds held in escrow in connection with the sale of a real property, and for other relief, brought to the Superior Court in the judicial district of Hartford and tried to the court, *Rosen, J.*; judgment awarding the funds to the plaintiff, from which the named defendant et al. appealed to this court. *Affirmed*.

*John A. Sodipo*, for the appellants (named defendant et al.).

*Patrick W. Boatman*, for the appellee (plaintiff).

SEELEY, J. This interpleader action arises from the sale of certain real property and a dispute between the parties as to whether the plaintiff, Randall Paquette, or the defendant 53 Westwood Lane, LLC (Westwood Lane), is entitled to the proceeds of that sale. The defendants

Westwood Lane and Gary Thompson[1] appeal from the judgment of the trial court awarding the sale proceeds to the plaintiff. On appeal, the defendants claim, inter alia, that the trial court improperly (1) found that the plaintiff is the sole member of Westwood Lane, and (2) determined that the plaintiff, rather than Westwood Lane, is entitled to the sale proceeds.[2] We affirm the judgment of the trial court.

The following facts, as found by the court, *Rosen, J.*, in a memorandum of decision dated March 20, 2024, or as undisputed in the record, and procedural history are relevant to the claims on appeal. "The plaintiff and Thompson have known each other since the 1990s. In 1999, the plaintiff and Thompson entered into a fifty-fifty partnership agreement to purchase, improve, and sell at a profit ('flip') certain properties. Over time, the parties flipped some fifty properties. In or about June, 2004, Thompson formed [Westwood Lane]. Thompson and the plaintiff were the sole members of [Westwood Lane]. [Westwood Lane] purchased certain real property located at 53 Westwood Lane in Litchfield in 2004 [(53 Westwood Lane property)]. Th[at] property was renovated and sold at a profit on or about February 28, 2005. The plaintiff and Thompson split the sale proceeds fifty-fifty. After that sale, [Westwood Lane] was inactive for several years.

"In the fall of 2008, the plaintiff became aware of [certain real property known as 175] Blue Hills Avenue [located in Hartford (Blue Hills Avenue property)] . . . and proposed to Thompson that they purchase and flip it, as they did with [the] [53] Westwood Lane property. Thompson was initially interested in acquiring the property but market conditions deteriorated and he lacked the funds to participate. The plaintiff agreed to provide the funds to purchase the property. On or about January 29, 2009,

---

[1] Also named as a defendant in this action is Law Offices of Jon C. Leary & Associates, LLC, which is not involved in this appeal. In this opinion, our references to the defendants are to Westwood Lane and Thompson.

[2] We address the defendants' claims in an order different from how they are presented in their principal appellate brief.

Thompson took title to the Blue Hills Avenue property. On that same day, Thompson executed a declaration of trust in which he confirmed that he was 'holding [the Blue Hills Avenue] property in trust for the benefit of [the plaintiff] . . . . The funds to purchase the property have all come from [the plaintiff] who has paid for the entire purchase price and closing costs. I have agreed to convey the property at any time to [the plaintiff] or his designee. [The plaintiff] has agreed to be responsible for maintaining insurance on the property and paying all property taxes due.' . . .

"On February 27, 2009, Thompson executed a quitclaim deed transferring title to the Blue Hills Avenue property to [Westwood Lane] for no consideration. . . . That same day, Thompson signed a document [titled] 'Transfer of Interest,' stating: 'I, Gary Thompson, of Cromwell, Connecticut, for One Dollar ($1.00) and other good and valuable consideration, do hereby transfer *all of my membership interest* in and to the Connecticut limited liability company known as [Westwood Lane] to [the plaintiff] . . . .'" (Citations omitted; emphasis in original; footnotes omitted.) The court noted in its memorandum of decision that "[n]either party offered into evidence the operating agreement for [Westwood Lane], if one exists. The court credits the plaintiff's testimony that he was a member of [Westwood Lane] and does not find credible Thompson's testimony that he was [Westwood Lane's] sole member." The court also stated that "[n]either party explained why Thompson quitclaimed the [Blue Hills Avenue] property to [Westwood Lane]," "the parties apparently did not file any documents with the Secretary of the State reflecting the change in member status," "Thompson did not file tax returns for [Westwood Lane] after 2009, and there was no evidence that he took an active role in [Westwood Lane's] affairs after the transfer."

"After acquiring the property, the plaintiff invested substantial funds to improve the Blue Hills Avenue property.[3] Thompson invested no money to acquire or

---

[3] "The court [did] not find credible Thompson's testimony that the plaintiff did not provide the funds to purchase the [Blue Hills Avenue]

improve the property. The plaintiff leased the [Blue Hills Avenue] property, collected the rents and otherwise treated the property as his own for a period of eleven to twelve years. In or about 2020, the plaintiff identified a purchaser for the property and asked Thompson to agree to the sale and confirm that the proceeds belonged to the plaintiff. On June 25, 2020, Thompson sent an email to the plaintiff 'confirming that the Blue Hills Avenue property and [Westwood Lane] [were] granted to you [in] 2009. You have full authority to sell, transfer or refinance the property. I agree to provide you with power of attorney or sign any documents that you may require.' . . .

"On or about July 27, 2020, Thompson, purporting to act as the sole member of [Westwood Lane], executed a document [titled], 'Resolution of 53 Westwood Lane, LLC,' stating, among other things: 'Be it further RESOLVED that, as the Sole Member of [Westwood Lane], the undersigned Gary Thompson hereby states that any and all proceeds and/or profits from the sale or refinance of the [Blue Hills Avenue] property shall be paid to [the plaintiff] . . . and/or any other company, corporation, limited liability company or other such business organization or entity of [the plaintiff's] choosing . . . . Be it further RESOLVED, that said [plaintiff] is duly authorized on behalf of [Westwood Lane] to execute any and all documentation necessary and to take any other action as necessary to effectuate the terms of the transaction(s) and proceeds/profits thereof; as described herein.' . . .

"The proposed sale in 2020 was not consummated. In early March, 2021, the plaintiff obtained another buyer for the Blue Hills Avenue property. Thompson provided a second resolution purportedly on behalf of [Westwood Lane] dated March 4, 2021, stating in pertinent part: 'RESOLVED: That Gary Thompson, a Member

property, an assertion that is contradicted by Thompson's admission in the declaration of trust that '[t]he funds to purchase the property have all come from [the plaintiff] who has paid for the entire purchase price and closing costs.' "

of [Westwood Lane], hereby authorizes and confirms that the sale proceeds from the sale of the [Blue Hills Avenue property] shall be paid to [the plaintiff] or any such entity that [the plaintiff] shall designate, in payment for services provided by [the plaintiff] in managing and maintaining the property on behalf of [Westwood Lane].'[4] . . .

"On or about March 5, 2021, the Blue Hills Avenue property was sold, resulting in net sale proceeds of $155,331.61. . . . The [Law Offices of Jon C. Leary & Associates, LLC (Leary law firm)] acted as the settlement agent for the transaction. A dispute thereafter arose between the plaintiff and Thompson with respect to the disposition of certain partnership properties. On July 14, 2021, Thompson instructed the Leary [law] firm not to release the net sale proceeds and stated that he was 'revoking the [resolution concerning Westwood Lane] that [he had] signed, effective immediately.'" (Citations omitted; emphasis omitted; footnote added; footnote in original.)

The plaintiff commenced the present interpleader action on September 9, 2021. On October 5, 2021, the Leary law firm filed a motion to pay funds into court, which was granted on November 10, 2021, and the Leary law firm thereafter deposited $147,130.19 (disputed funds) into court, which represented the net sale proceeds less a payment to the Metropolitan District [Commission] of $7551.42 and $650 in attorney's fees to the Leary law firm. On December 15, 2021, the plaintiff filed a motion for an interlocutory judgment of interpleader, which the court, *Rosen, J.*, granted on May 16, 2022.

In his second amended complaint filed on October 11, 2022, the plaintiff alleged that he commenced this interpleader action to resolve a disagreement between the parties regarding the disputed funds. He alleged that,

[4]The plaintiff testified that, in connection with the potential sale of the Blue Hills Avenue property in 2020, and its sale in 2021, the bank had required him to obtain the resolutions from Thompson, who was still listed as a member of Westwood Lane with the Secretary of the State.

"[a]s evidenced by the 2009 declaration of trust and transfer of interest, Thompson no longer had a legal ownership right in the Blue Hills [Avenue] property and [that] [the plaintiff] was at all times the equitable owner of the Blue Hills [Avenue] property.[5] . . . As evidenced by several resolutions signed by Thompson purportedly on behalf of [Westwood Lane], [the plaintiff] was contractually entitled to receipt of the [disputed] funds. . . . By attempting to revoke the aforesaid resolutions months after the closing and many years after transferring away his interests in the Blue Hills [Avenue] property and [Westwood Lane], Thompson, acting independently and allegedly through [Westwood Lane], has breached his contract." (Footnote added.)

"In their July 24, 2023, statement of claim, Thompson and [Westwood Lane] assert that the Connecticut Uniform Limited Liability Company Act [(CULLCA)], General Statutes § 34-243 et seq., effective July 1, 2017 . . . is the law applicable to this action. They argue that (1) an unrecorded transfer that purports to transfer all of a member's interests in a limited liability company alone does not cause a dissociation of the member under General Statutes § 34-259a (a);[6] (2) the plaintiff failed to allege facts showing Thompson's dissociation of [Westwood Lane], and therefore the plaintiff is at best a transferee and an unsecured creditor of [Westwood Lane] pursuant to General Statutes § 34-255c (d); (3) property transferred to or otherwise acquired by a limited liability

---

[5] We find no merit to the defendants' contention in their principal appellate brief that the plaintiff never alleged in his complaint that he had an equitable interest in the disputed funds in light of the plaintiff's allegation that he was, at all times, the equitable owner of the Blue Hills Avenue property.

[6] General Statutes § 34-259a (a) provides in relevant part: "[A] transfer, in whole or in part, of a transferable interest: (1) Is permissible; (2) does not by itself cause a member's dissociation or a dissolution and winding up of the limited liability company's activities and affairs; and (3) subject to section 34-259c, does not entitle the transferee to: (A) Participate in the management or conduct of the company's activities and affairs; or (B) except as provided in subsection (c) of this section, have access to records or other information concerning the company's activities and affairs."

company is property of the limited liability company and not the members individually; **(4)** regardless of whether the plaintiff is a member or transferee, he has no interest in the sale proceeds, which belong to [Westwood Lane]; **(5)** [Westwood Lane] is the rightful owner of the proceeds; and **(6)** Thompson has an interest in the proceeds that is secondary to that of [Westwood Lane]. . . . Given that Thompson disclaimed any entitlement to the disputed funds at trial, the issue before the court is whether the plaintiff or [Westwood Lane] is entitled to those funds."[7] **(**Citation omitted; footnote added.**)**

The court held a trial on September 29, 2023, at which the plaintiff and Thompson testified, and the court admitted various exhibits submitted by the parties into evidence. On March 20, 2024, the court issued its memorandum of decision, in which it determined that the plaintiff was entitled to the disputed funds. This appeal followed.[8] Additional facts and procedural history will be set forth as necessary.

Before addressing the merits of the claims on appeal, we first set forth the general legal principles governing interpleader actions. General Statutes §"52-484 provides in relevant part: 'Whenever any person has, or is alleged to have, any money or other property in his possession which is claimed by two or more persons, either he, or any of the persons claiming the same, may bring a complaint in equity, in the nature of a bill of interpleader, to any court which by law has equitable jurisdiction of

[7] At trial, Thompson acknowledged that he, personally, did not have any claim to the disputed funds.

[8] During oral argument before this court, there was a suggestion that Westwood Lane had been dissolved. We, therefore, ordered the parties to file documentation regarding the current status of Westwood Lane on or before October 29, 2025. The documentation filed by the parties demonstrates that Westwood Lane was listed as an active limited liability company with the Secretary of the State at the time this appeal was filed and is currently listed as an active business, despite having been administratively dissolved in December, 2021, and August, 2025, for having failed to file annual reports, as certificates of reinstatement were filed on March 14, 2022, and on October 17, 2025, the day after oral argument before this court.

the parties and amount in controversy, making all persons parties who claim to be entitled to or interested in such money or other property. Such court shall hear and determine all questions which may arise in the case . . . .' 'Actions pursuant [to] § 52-484 involve two distinct parts . . . . In the first part, the court must determine whether the interpleader plaintiff has alleged facts sufficient to establish that there are adverse claims to the fund or property at issue. . . . If the court considers interpleader to be proper under the circumstances, then the court may render an interlocutory judgment of interpleader. . . . Only once an interlocutory judgment of interpleader has been rendered may the court hold a trial on the merits, compelling the parties to litigate their respective claims to the disputed property.'" *John Hancock Life Ins. Co.* v. *Curtin*, 219 Conn. App. 613, 621, 295 A.3d 1055, cert. granted on other grounds, 348 Conn. 921, 304 A.3d 147 (2023) (appeal withdrawn November 22, 2024). In the present case, the trial court determined that "the plaintiff satisfied the elements of an interpleader action," as he "alleged facts sufficient to establish that there [were] adverse claims to the disputed funds . . . ." Thus, the court granted an interlocutory judgment of interpleader, after which the parties litigated their claims to the disputed funds before the court.

"It is well established that [i]n a case tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony. . . . On appeal, we do not retry the facts or pass on the credibility of witnesses. . . . We afford great weight to the trial court's findings because of its function to weigh the evidence and determine credibility. . . . Thus, those findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks

omitted.) *Miller* v. *Maurer*, 189 Conn. App. 769, 774, 208 A.3d 1249 (2019). With these principles in mind, we turn to the claims raised on appeal.

I

The defendants claim that the court improperly found that the plaintiff is the sole member of Westwood Lane. Specifically, they claim that Thompson's transfer in 2009 of his membership interest in Westwood Lane did not terminate his membership in Westwood Lane. In support of this claim, the defendants rely on the provisions of CULLCA, namely, § 34-259a (a), which provides that a transfer in whole or in part of a member's interest does not in and of itself cause a member's dissociation from the limited liability company. We agree with the court that the defendants' reliance on CULLCA is misplaced.

At the outset, we note that the question of whether the court properly determined that the plaintiff's claims are not governed by CULLCA presents an issue of statutory construction over which we exercise plenary review. See *Meadowbrook Center, Inc.* v. *Buchman*, 328 Conn. 586, 594, 181 A.3d 550 (2018) (" '[t]he interpretation and application of a statute . . . involves a question of law over which [appellate] review is plenary' "); *RCN Capital, LLC* v. *Sunford Properties & Development, LLC*, 196 Conn. App. 823, 829, 231 A.3d 201 (2020) (same); *In re Francisco R.*, 111 Conn. App. 529, 536, 959 A.2d 1079 (2008) (" '[w]e review the application of a statute to a particular set of facts by the plenary standard of review' "). "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . It is a basic tenet of statutory construction that [w]e construe a statute as

a whole and read its subsections concurrently in order to reach a reasonable overall interpretation." (Internal quotation marks omitted.) *Loch View, LLC* v. *Windham*, 237 Conn. App. 462, 486,    A.3d    (2026).

At the time of Thompson's transfer of "all of [his] interest" in Westwood Lane in 2009, the law governing limited liability companies was the Connecticut Limited Liability Company Act (CLLCA), General Statutes § 34-100 et seq. General Statutes (Rev. to 2009) § 34-170 (a) of CLLCA provides in relevant part: "(1) A limited liability company membership interest is assignable in whole or in part; (2) an assignment entitles the assignee to receive, to the extent assigned, only the distributions to which the assignor would be entitled . . . (4) until the assignee of a limited liability company interest becomes a member, the assignor continues to be a member and to have the power to exercise any rights of a member . . . ." Pursuant to General Statutes (Rev. to 2009) § 34-172 (d), "a member who assigns his entire limited liability company membership interest ceases to be a member or to have the power to exercise any rights of a member when any assignee of his interest becomes a member with respect to the assigned interest."

Effective July 1, 2017, our legislature repealed CLLCA; see Public Acts 2016, No. 16-97, § 110; and replaced it with CULLCA. See *Rubin* v. *Brodie*, 228 Conn. App. 617, 634, 325 A.3d 1096 (2024). "CULLCA made many changes to the laws governing limited liability companies . . . ." (Internal quotation marks omitted.) Id. Relevant to the present case, § 34-259a (a) provides in relevant part that "a transfer, in whole or in part, of a transferable interest: (1) Is permissible; [and] (2) does not by itself cause a member's dissociation or a dissolution and winding up of the limited liability company's activities and affairs . . . ." The defendants rely on this language in support of their claim that Thompson did not cease being a member of Westwood Lane in 2009 when he transferred "all of [his] interest" in the company to the plaintiff, and that "Thompson's rights and

responsibilities as a member remained in full effect . . . .” They contend that the transaction at issue in this case concerns the resolution executed by Thompson in March, 2021, and that, because Thompson allegedly breached that resolution in 2021 when he directed the Leary law firm not to release the disputed funds to the plaintiff, the present case is governed by the provisions of CULLCA, rather than CLLCA. We disagree.

Initially, we point out that the defendants are mistaken in their reliance on 2021 as the operative year for purposes of determining which law applies to this case. Although this interpleader action concerns the proceeds from the sale of the Blue Hills Avenue property in 2021 and the failure of the Leary law firm to convey the disputed funds from that sale to the plaintiff, a determination of the central issue of which party is entitled to the disputed funds requires an examination of the effect of Thompson’s transfer of his interest in Westwood Lane to the plaintiff in 2009, following the purchase of the Blue Hills Avenue property. As we noted previously in this opinion, when the plaintiff proposed to Thompson that they should purchase and “flip” that property, Thompson lacked sufficient funds to participate, and the plaintiff agreed to provide the funds to purchase the property. On the same day that Thompson took title to the Blue Hills Avenue property, he executed a declaration of trust in which he confirmed that he was “holding [the Blue Hills Avenue] property in trust for the benefit of [the plaintiff],” that “[t]he funds to purchase the property ha[d] all come from [the plaintiff],” and that he had “agreed to convey the property at any time to [the plaintiff] or his designee.” Approximately one month later, Thompson executed a quitclaim deed transferring title to the Blue Hills Avenue property to Westwood Lane, and, on that same day, he signed a document titled, “Transfer of Interest,” in which he transferred “*all of* [*his*] *membership interest* in and to [Westwood Lane] . . . to [the plaintiff] . . . .’ ” (Emphasis added.) As the court stated in its memorandum of decision, “[t]he defendants’ principal argument” concerned Thompson’s *2009 transfer* of his

membership interest to the plaintiff, and the issue before the court was whether the plaintiff or Westwood Lane was entitled to the disputed funds, which necessarily hinged on the legal effect of that transfer.

Consequently, we conclude that we must look to the law in effect in 2009—CLLCA—to determine the legal effect of Thompson's transfer of his interest in Westwood Lane. See generally *Deming* v. *Nationwide Mutual Ins. Co.*, 279 Conn. 745, 780, 905 A.2d 623 (2006) ("[T]he law . . . is that statutes existing at the time a contract is made become part of it and must be read into it just as if an express provision to that effect were inserted therein, except where the contract discloses a contrary intention. . . . Contracting parties are presumed to contract in reference to existing law, and to have in mind all the existing laws relating to the contract, or to the subject matter thereof." (Citations omitted; internal quotation marks omitted.)); *Tyler* v. *Schnabel*, 34 Conn. App. 216, 220–21, 641 A.2d 388 (1994) (applying law in effect at time alleged fraudulent conveyance was made); see also *Curley* v. *Phoenix Ins. Co.*, 220 Conn. App. 732, 754, 299 A.3d 1133 ("statute existing at the time an agreement is executed becomes a part of it and must be read into it" (internal quotation marks omitted)), cert. denied, 348 Conn. 914, 303 A.3d 260 (2023). Therefore, the trial court correctly concluded that the defendants' arguments predicated on CULLCA were inapplicable.[9]

When we apply the provisions of CLLCA to the facts of this case, we agree with the trial court's conclusion that the plaintiff became the sole member of Westwood Lane on February 27, 2009, when Thompson transferred all of his membership interest in the limited liability company to the plaintiff. The court found that, at the time of that transfer, the plaintiff was a member of Westwood Lane. In making that finding, the court specifically credited the plaintiff's testimony that he was a member of Westwood

[9] We note that the defendants' claim on appeal that Thompson remained a member of Westwood Lane following the transfer of his interest to the plaintiff in 2009 is predicated solely on an application of the provisions of CULLCA, which we have determined do not apply.

Lane and found not credible Thompson's testimony that he was the sole member of Westwood Lane. It is axiomatic that, as a reviewing court, we must defer to the trial court's credibility findings. See *Prescott* v. *Gilshteyn*, 227 Conn. App. 553, 575–76, 322 A.3d 1060 ("[T]he trial court is free to accept or reject, in whole or in part, the evidence presented by any witness, having the opportunity to observe the witnesses and gauge their credibility. . . . This court defers to the trial court's discretion in matters of determining credibility and the weight to be given to a witness' testimony." (Internal quotation marks omitted.)), cert. denied, 350 Conn. 926, 326 A.3d 248 (2024); *State* v. *Leuders*, 225 Conn. App. 612, 645, 317 A.3d 69 ("[w]e thus defer to the trial court's credibility determination and conclude that its derivative findings were not clearly erroneous"), cert. denied, 349 Conn. 920, 321 A.3d 402 (2024). Accordingly, we cannot conclude that the court's finding that the plaintiff was a member of Westwood Lane at the time Thompson transferred his interest therein is clearly erroneous. See *Alpha Beta Capital Partners, L.P.* v. *Pursuit Investment Management, LLC*, 193 Conn. App. 381, 441, 219 A.3d 801 (2019) ("to the extent that the court's decision is founded on its credibility determinations, we cannot second-guess those determinations on appeal"), cert. denied, 334 Conn. 911, 221 A.3d 446 (2020), and cert. denied, 334 Conn. 911, 221 A.3d 446 (2020). Our determination is further supported by evidence concerning Thompson's actions in the years following the transfer. The court found that "Thompson did not file tax returns for [Westwood Lane] after 2009, and there was no evidence that he took any active role in [Westwood Lane's] affairs after the transfer." Additionally, in a June, 2020 email, Thompson confirmed that Westwood Lane had been "granted to [the plaintiff] [in] 2009," and that the plaintiff had "full authority to sell, transfer or refinance the property," and, in the 2020 and 2021 resolutions that Thompson had signed concerning Westwood Lane, Thompson reiterated that the plaintiff was "duly authorized" to act on behalf of Westwood Lane and was entitled

to "all proceeds and/or profits from the sale or refinance of the [Blue Hills Avenue] property . . . ."

Pursuant to General Statutes (Rev. to 2009) § 34-172 (d), "a member who assigns his entire limited liability company membership interest ceases to be a member or to have the power to exercise any rights of a member when any assignee of his interest becomes a member with respect to the assigned interest." In the present case, the plaintiff already was a member of Westwood Lane when Thompson transferred "all of [his] membership interest" in the company to the plaintiff; thus, Thompson ceased to be a member upon that transfer.[10] Accordingly, the trial court properly determined that the plaintiff is the sole member of Westwood Lane, and the defendants' claim, therefore, fails.

## II

Next, we address the claim raised by Westwood Lane[11] that the trial court improperly determined that the plaintiff, rather than Westwood Lane, is entitled to the disputed funds. We do not agree.

We review the court's finding that the plaintiff was entitled to the disputed funds under the clearly erroneous standard of review. See, e.g., *Miller* v. *Maurer*, supra, 189 Conn. App. 776 (court's finding in interpleader

[10] It necessarily follows that Thompson, as a former member of Westwood Lane, no longer had any legal interest in the company and, thus, had no legal right to instruct the Leary law firm to withhold payment to the plaintiff, and the resolutions that he purportedly executed on behalf of Westwood Lane in 2020 and 2021 were without legal effect.

[11] To the extent that Thompson, who claims no entitlement to the disputed funds personally, purports to raise this claim on behalf of Westwood Lane, we conclude that he lacks standing to do so. In light of our determination that Thompson no longer is a member of Westwood Lane, a determination of whether the plaintiff or Westwood Lane is entitled to the disputed funds cannot be said to adversely affect any cognizable legal interest of Thompson. See *Miller* v. *Maurer*, supra, 189 Conn. App. 779; see also *Christophersen* v. *Christophersen*, 150 Conn. App. 174, 181–82, 90 A.3d 357 (2014) (putative rights that defendant asserted belonged to trust and not to defendant personally and, therefore, defendant lacked standing to pursue rights of trust on appeal). Therefore, we address this claim only with respect to Westwood Lane.

action that plaintiff was entitled to 15 percent of settlement proceeds was not clearly erroneous). As we have indicated in this opinion, "[a] finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) Id., 774. "Because it is the trial court's function to weigh the evidence and [to] determine credibility, we give great deference to its findings." (Internal quotation marks omitted.) *Kenmore Road Assn., Inc.* v. *Bloomfield*, 206 Conn. App. 877, 880, 261 A.3d 861 (2021); see also *State* v. *Cusson*, 210 Conn. App. 130, 155 n.21, 269 A.3d 828 ("the trial court is given great deference in its fact-finding function because it is in the unique [position] to view the evidence presented in a totality of circumstances . . . including its observations of the demeanor and conduct of the witnesses and parties" (internal quotation marks omitted)), cert. denied, 343 Conn. 913, 274 A.3d 114 (2022).

We conclude that the evidence in the record supports the court's finding that the plaintiff was entitled to the disputed funds. Specifically, the plaintiff testified that Westwood Lane was formed for the purpose of purchasing the 53 Westwood Lane property and that Westwood Lane purchased that property. Thereafter, the plaintiff and Thompson renovated the property, sold it at a profit, and split the sale proceeds fifty-fifty. In 2009, when the plaintiff became aware of the Blue Hills Avenue property, he wanted to purchase and "flip" the property similar to the 53 Westwood Lane property. Because Thompson lacked sufficient funds to participate, the plaintiff provided the funds for the purchase of the Blue Hills Avenue property, and Thompson initially took title to the property in his name. Thompson, however, subsequently transferred title to the property to Westwood Lane and his interest in Westwood Lane to the plaintiff.

As we have concluded in part I of this opinion, when Thompson transferred his entire interest in Westwood Lane to the plaintiff in 2009, the plaintiff became the sole member of Westwood Lane. The court found that, "[u]pon the transfer, the plaintiff was entitled to all distributions to which Thompson would otherwise have been entitled. See [General Statutes (Rev. to 2009)] § 34-170 (a) (1), (2) and (4)." In light of the previous transaction concerning the 53 Westwood Lane property, which also had been purchased by Westwood Lane,[12] and in which Thompson and the plaintiff sold the property at a profit and split the sale proceeds fifty-fifty, the court reasonably concluded that the plaintiff, now as the sole member of Westwood Lane, was entitled to the entire

[12] On appeal, Westwood Lane argues that, even if this court concludes that the provisions of CLLCA apply to this case, the Blue Hills Avenue property became property of Westwood Lane upon its transfer by quitclaim deed to the limited liability company and, thus, that the proceeds of its sale belong to Westwood Lane, not the plaintiff. "A duly executed quitclaim deed 'has the force and effect of a conveyance to the releasee of all the releasor's right, title and interest in and to the property described . . . . [It] may be used as a release of a mortgage, attachment, judgment lien or any other interest in real property.' General Statutes § 47-36f." *Bayview Loan Servicing, LLC* v. *Ishikawa*, 220 Conn. App. 625, 634, 298 A.3d 1276 (2023). Moreover, General Statutes (Rev. to 2009) § 34-167 (a) "clearly establishes that [p]roperty transferred to or otherwise acquired by a limited liability company is property of the limited liability company and not of the members individually and that [a] member has no interest in specific limited liability company property." (Internal quotation marks omitted.) *Bongiorno* v. *Capone*, 185 Conn. App. 176, 199, 196 A.3d 1212, cert. denied, 330 Conn. 943, 195 A.3d 1134 (2018).

Thus, we agree that, by virtue of Thompson's transfer of title to the Blue Hills Avenue property to Westwood Lane by quitclaim deed in 2009, not only did Thompson no longer have any legal interest in the property, but also the Blue Hills Avenue property became property of the limited liability company—Westwood Lane. We do not agree, however, that this renders the court's finding that the plaintiff was entitled to the disputed funds improper. As we have indicated, the court found that the plaintiff was entitled to all distributions to which Thompson would otherwise have been entitled, and in light of the fifty-fifty split of the proceeds from the sale of the 53 Westwood Lane property, which also had been purchased by Westwood Lane, we find this claim unavailing. Westwood Lane has not directed this court to any authority demonstrating error in the court's judgment.

amount of the disputed proceeds. Accordingly, we cannot conclude that the court's finding that the plaintiff was entitled to the disputed funds is clearly erroneous.[13]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[13] The defendants also claim that the trial court improperly found that Thompson breached a contractual agreement he had entered into with the plaintiff. Because the defendants' arguments in support of this claim are premised primarily on the provisions of CULLCA, the claim necessarily fails in light of our determination that the provisions of CULLCA do not apply to this case. Moreover, even if we were to agree that the court improperly found that Thompson was in breach of his contractual agreement with the plaintiff, that would not alter our determination that the court's finding that the plaintiff was entitled to the disputed funds is not clearly erroneous. The court's award of the disputed funds to the plaintiff did not constitute damages for breach of contract; rather, the court's finding that the plaintiff was entitled to the disputed funds was based on its finding that the plaintiff became the sole member of Westwood Lane in 2009 upon Thompson's transfer of his interest to the plaintiff, which entitled the plaintiff to all distributions to which Thompson would have been entitled.